IN THE CIRCUIT COURT OF THE TENTH JUDICIAL CIRCUIT
IN AND FOR POLK COUNTY, FLORIDA

CHERYL FENWICK,

     Plaintiff,

vs.                                                     CASE NO. 2017-CA-0271

GOVERNMENT EMPLOYEES INSURANCE
COMPANY,

     Defendant,

_____/

## COMPLAINT

Plaintiff, CHERYL FENWICK, by and through the undersigned attorneys, hereby

sues the Defendant, GOVERNMENT EMPLOYEES INSURANCE COMPANY,

(hereinafter referred to as GEICO), and alleges:

1.    This is an action for damages which exceed $15,000.00.

2.    At all times material hereto, Plaintiff, CHERYL FENWICK, was a resident of

Polk County, Florida.

3.    At all times material hereto, Defendant, GOVERNMENT EMPLOYEES

INSURANCE COMPANY, (hereinafter referred to as "GEICO") was a foreign profit

corporation licensed to do business in the State of Florida.

4.    At all times material hereto, Plaintiff was insured under a policy providing

uninsured/underinsured motorist coverage with GEICO, such policy is in the exclusive

possession and control of GEICO.

5.    On or about October 28, 2015, THAMON MOORE, negligently operated or

maintained a motor vehicle at the intersection of US Highway 27 and Crump Road, Lake

Hamilton, Polk County, Florida, where he collided with the Plaintiff who was a passenger in a vehicle where the operator was driving his vehicle lawfully.

6.    At all times material hereto, THAMON MOORE, had bodily injury coverage; however he was underinsured due to the Plaintiff's injuries exceeding those bodily injury limits.

## COUNT I
## UNINSURED MOTORIST BENEFITS – GEICO

7.  Plaintiff incorporates paragraphs 1 through 6 as if fully set forth herein.

8.  THAMON MOORE was insured under Progressive policy number 21229584 with bodily injury coverage limits of $10,000 per person and $20,000 per occurrence. The bodily injury coverage available under this policy is insufficient to fully satisfy Plaintiff's claim for personal injuries.

9.  Defendant, GEICO issued, in exchange for valuable consideration, a policy of automobile insurance to Plaintiff under policy number 0989649009 which provided uninsured motorist benefits, among other coverages.  A copy of the GEICO Insurance Company Policy as provided by GEICO is attached hereto as **Exhibit "A".** The Policy was in full force and effect at the time of the Crash.

10. The Policy provides, in pertinent part, as follows:

> Under the Uninsured Motorist coverage we will pay damages for bodily injury sustained by an insured caused by an accident which the insured is legally entitled to recover from the owner or operator of an uninsured auto arising out of the ownership, maintenance or use of that auto.

The Policy provides an Uninsured Motorists Bodily Insurance Coverage limit of $100,000 per person and $300,000 per occurence.

2

11.   Plaintiff paid premiums for Uninsured Motorists Bodily Injury Coverage.

12.   At the time of the Crash, CHERYL FENWICK was an "insured" as defined in the Uninsured Motorists Bodily Injury Coverage section in the GEICO insurance policy.

13.   GEICO has unjustifiably refused to honor its contractual obligations by denying coverage under the Policy and failing to pay the uninsured motorist benefits owed to Plaintiff.

14.   As a direct, foreseeable, and proximate result of the Crash, CHERYL FENWICK suffered permanent bodily injury and resulting Pain and suffering, disability, disfigurement, mental anguish, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care and treatment, loss of earnings and loss of ability to earn money. The losses are either permanent or continuing and CHERYL FENWICK will suffer these losses in the future.

15.   GEICO was notified of CHERYL FENWICK'S loss and CHERYL FENWICK has complied with all the terms and conditions precedent to entitlement to uninsured motorist benefits under the GEICO Insurance Company Policy.

WHEREFORE, Plaintiff, demands a trial by jury and further demands judgment against GEICO for the full amount of damages which will serve as the amount of recovery in the bad faith count.

### COUNT II
### VIOLATIONS OF SECTION 624.155, FLORIDA STATUTES
### INSURANCE COMPANY

16.   Plaintiff incorporates paragraphs 1 through 16 as if fully set forth herein.

17.   Plaintiff alleges Defendant, GEICO'S violations of Section 624.155, Florida

Statutes.

18.    This claim will ripen upon the resolution of the uninsured motorist claim that Plaintiff is entitled uninsured motorist benefits under the GEICO and this claim will be voluntarily abated until such determination is made. Fridman v. Safeco Ins. Co. of Illinois, --- So.3d ---, 2016 WL 743258 (Fla. Feb. 25, 2016). Bottini v. GEICO Gen. Ins. Co., 8:13-CV-365-T-17EAP, 2014 WL 4749054 (M.D. Fla. Sept. 23, 2014).

19.    On October 10, 2016, Plaintiff filed a Civil Remedy Notice of Insurer Violation with the Florida Department of Insurance and served a copy of the Civil Remedy Notice of Insurer Violation upon GEICO. A copy of the Insurance Company CRN is attached hereto as **Exhibit "B"**.

20.    GEICO responded to the Civil Remedy Notice but did not pay or correct the circumstances.

21.    As a result of the injuries caused by the negligence of the at fault driver, THAMON MOORE, an underinsured motorist, and the relationship between Plaintiff, CHERYL FENWICK and GEICO Insurance Company under policy number 0989649009 owed a duty to Plaintiff to attempt in good faith to settle Plaintiff's uninsured motorist claim when, under all the circumstances, it could and should have done so, had it acted fairly and honestly toward its insured and with due regard for Plaintiff's interests. GEICO further owed to Plaintiff a duty to refrain from engaging in unfair claim settlement practices.

22.    GEICO breached its duties to Plaintiff, in violation of section 624.155, Florida Statutes, by failing to attempt, in good faith, to settle Plaintiff's uninsured motorist claim when, under all of the circumstances, it could have and should have done

4

so, had it acted fairly and honestly and with due regard for Plaintiff's interests, who was an insured, in violation of section 624.155(1)(b)(1), Florida Statutes.

23.     GEICO failed to cure its bad faith and more than sixty (60) days have passed since the filing and service date of the Civil Remedy Notice to GEICO.

24.     As a result of GEICO'S failure to act in good faith and statutory violations alleged above, Plaintiff is entitled to recover the total amount of her damages pursuant to section 627.727(10), Florida Statutes, including all damages suffered as a result of the Crash and all damages caused by Defendant's failure to act in good faith and statutory violations alleged above.

25.     In addition to the contractual benefits owed under the GEICO Policy, Plaintiff is entitled to interest on unpaid benefits, pre-judgment interest accrued since the date of Defendant's violation; attorney's fees incurred by Plaintiff in the prosecution of his claim for uninsured motorist benefits and pre-judgment interest thereon; costs incurred in the prosecution of Plaintiff's claim for uninsured motorist benefits, including expert witness fees; costs incurred in the prosecution of Plaintiff's claim for violation of section 624.155; Florida Statutes; and post-judgment interest.

26.     As a further direct and proximate result of GEICO'S failure to act in good faith and statutory violations alleged above, Plaintiff had to agree to pay for the services of the undersigned attorneys to bring this action and recover the damages owed by GEICO. By operation of law, including sections 627.727(10) and 627.428, Florida Statutes, GEICO will be obligated to pay those fees upon the successful conclusion of Plaintiff's claim.

27.     All conditions precedent to Plaintiff's rights to bring this action have

occurred or been satisfied.

WHEREFORE, Plaintiff, CHERYL FENWICK, demands judgment against Defendant, GEICO, for the total damages suffered by Plaintiff, pre and post-judgment interest, attorneys' fees pursuant to Sections 624.155, 627.727(10), and 627.428, Florida Statutes, costs, and any other relief this Court deems proper, and further demands a trial by jury on all issues so triable.

Dated this _____ day of January, 2017.


                         LOPEZ & HUMPHRIES, P.A.

                         /s/ Melodie J. Lopez
                    By:_____
                         Melodie J. Lopez, Esquire
                         Florida Bar No. 0039942
                         2420 South Florida Avenue
                         Lakeland, FL 33803
                         (863) 709-1800
                         Attorney for Plaintiff
                         Primary email: Lopez@yourpolkattorneys.com
                         Secondary email: mick@yourpolkattorneys.com

# CERTIFIED COVER SHEET

| | | | |
|---|---|---|---|
| Claim Number: | 0023774470101331 | Date Of Loss: | 10/28/2015 |
| Adjuster: | J565 | | |
| Policyholder: | SCOTT F AND CHERYL A FENWICK | | |
| Policy Number: | 0989649009 | | |

Policy Term Start Date: 6/1/2015
Company: Government Employees Insurance Company

A. SPEARS          Date Requested: 11/10/2015
                   Date Processed: 11/13/2015

EXHIBIT 'A'

## REGION 6 UNDERWRITING RESPONSE TO CLAIMS
## REQUEST FOR F.S. 627.4137
## COPY OF THE POLICY

The Policy Declarations sheet has been electronically forwarded to Claims for Claim Number 0023774470101331, Policy Number 0989649009, and issued to SCOTT F AND CHERYL A FENWICK based upon records in our computer data in our files and was in effect on the date of loss 10/28/2015.

The policy contract, amendments and endorsements, also electronically forwarded to Claims, are standard forms with information particular to Policy Number 0989649009 and issued to SCOTT F AND CHERYL A FENWICK and was in effect the date of loss 10/28/2015.

A. SPEARS
Underwriting Department

# GEICO

ONE GEICO PLAZA
Washington, D. C. 20076-0001
Telephone: 1-800-841-3000

# Florida
# Family
# Automobile
# Insurance
# Policy

A-70FL (03-11)

# YOUR POLICY INDEX

Page

**SECTION I - Liability Coverages**
**Your Protection Against Claims From Others**

Definitions............................................................ 3
Losses We Will Pay For You.................................... 3
Additional Payments We Will Make Under
  The Liability Coverages........................................ 4
    Legal Expenses And Court Costs
    Bail And Appeal Bonds
    First Aid Expenses
Exclusions: When Section I Does Not Apply .......... 4
Persons Insured: Who Is Covered .......................... 5
Financial Responsibility Laws ................................ 5
Out of State Coverage ......................................... 5
Limits Of Liability ............................................. 5
Other Insurance.................................................... 5
Conditions............................................................ 5
    Notice
    Assistance And Cooperation Of The Insured
    Action Against Us
    Subrogation

**SECTION II - Personal Injury Protection Coverage**

Personal Injury Protection (Part I) ........................ 6
Definitions............................................................ 6
Payments We Will Make ....................................... 8
Exclusions ........................................................... 8
Limits Of Liability; Application Of Deductible;
  Other Insurance.................................................. 9
Policy Period; Territory ......................................... 9
Conditions............................................................ 9
    Notice
    Action Against The Company
    Proof Of Claim; Medical Reports and
      Examinations; Payment of Claim Withheld
    Reimbursement And Subrogation
    Special Provisions For Rented Or Leased Vehicles
Modification Of Policy Coverages (Part II) ......... 10
Provisional Premium (Part III) ........................... 10
Automobile Medical Payments Coverage
(Part IV) ............................................................ 10

**SECTION III - Physical Damage Coverages**
**Your Protection For Loss Of Or Damage To Your Car**

Definitions.......................................................... 13
Losses We Will Pay ............................................ 14
    Comprehensive(Excluding Collision) ............... 14
    Collision ........................................................ 14
Additional Payments We Will Make Under The
  Physical Damage Coverages............................. 14
  Car Rental If Your Car Is Stolen ....................... 14

Page

Exclusions:  When The Physical Damage
  Coverages Do Not Apply.................................... 14
Limit Of Liability  ............................................... 15
Other Insurance................................................... 15
Conditions........................................................... 15
    Notice
    Assistance And Cooperation Of The Insured
    Action Against Us
    Insured's Duties In Event Of Loss
    Appraisal
    Payment Of Loss
    No Benefit To Bailee
    Subrogation
    Assignment

**SECTION IV - Uninsured Motorists Coverage**
**Your Protection For Injuries Caused By**
Uninsured And Hit-And-Run Motorists  .............. 17

**SECTION V - General Conditions**
**The Following Apply To All Coverages In This Policy**
Territory - Policy Period ...................................... 17
Premium.............................................................. 17
Changes.............................................................. 17
Assignment ......................................................... 17
Cancellation By The Insured................................. 17
Cancellation By Us............................................... 18
Cancellation By Us Is Limited................................ 18
Renewal.............................................................. 18
Non Renewal....................................................... 18
Mediation Of Claims............................................ 19
Other Insurance................................................... 19
Action Against Us................................................. 19
Dividend Provision ............................................. 19
Declarations........................................................ 19
Fraud And Misrepresentation ............................... 19
Examination Under Oath....................................... 19
Terms Of Policy Conformed To Statutes .............. 19
Choice of Law...................................................... 19

**SECTION VI -  Amendments And Endorsements**

Special Endorsement
United States Government Employees ................. 20

Whenever "he," "his," "him," or "himself" appears in this policy, you may read "she," "her," "hers," or "herself."

## AGREEMENT

We, the Company named in the declarations attached to this policy, make this agreement with        you , the policyholder. Re  lying on the information you have furnished and the declarations attached to this policy and if you pay your premium  when due, we will do the following:

## SECTION I - LIABILITY COVERAGES

### Bodily Injury Liability And Property Damage Liability
### Your Protection Against Claims From Others

DEFINITIONS

The words bolded and italicized in Section I of this policy are defined below.

1.  Auto business  means the business of selling, repairing, servicing, storing, transporting or parking of autos.
2.  Bodily injury  means bodily injury to a person, caused by accident, including resulting sickness, disease or death. All claims for damages arising from bodily injury to a person from a single loss shall be considered one bodily injury.
3.  Farm auto  means a truck type vehicle with a gross vehicle weight of 15,000 pounds or less, not used for commercial purposes other than farming.
4.  Insured  means a person or organization described under PERSONS INSURED.
5.  Non-owned auto  means a private passenger , farm or utility auto  or trailer not owned by, furnished or available for regular use of either you  or your relative , other than a temporary substitute auto   . An auto rented or leased for more than 30 days will be considered as furnished or available for regular use.
6.  Owned auto  means:
    (a)  A vehicle described in this policy for which a premium charge is shown for these coverages;
    (b)  A trailer  owned by you ;
    (c)  A private passenger , farm or utility auto  , ownership of which you  acquire during the policy period or for which you  enter into a lease during the policy period for a term of six months or more, if
        (i)  it replaces an owned auto  as defined in (a) above; or
        (ii)  We insure all private passenger , farm and utility autos  owned by you  on the date of the acquisition, and you  ask us to add it to the policy no more than 30 days later;
    (d)  A temporary substitute auto   .
7.  Private passenger auto  means a four-wheel private passenger, station wagon or jeep-type auto, including a  farm or utility auto  as defined.
8.  Relative  means a person related to you  by blood, marriage or adoption (including a ward or foster child) who is a resident of the same household as you.
9.  Temporary substitute auto   means a private passenger. , farm or utility auto  or trailer , not owned by you  or your relative , temporarily used with the permission of the owner. This vehicle must be used as a substitute for the  owned auto  or trailer  when withdrawn from normal use because of its breakdown, repair, servicing, loss or destruction. This vehicle will no longer qualify as a  temporary substitute auto:
    (a)  Five (5) days after the  owned auto  is deemed by us to be a total loss, and
    (b)  We pay the applicable limit of liability under Section III.
10. Trailer  means a vehicle designed to be towed by a private passenger auto  . If the vehicle is being used for business or commercial purposes, it is a trailer only while used with a  private passenge r, farm or utility auto  . Trailer also means a farm wagon or farm implement used with a  farm auto .
11. Utility auto  means a vehicle, other than a farm auto , with gross vehicle weight of 15,000 pounds or less of the pick-up body, van or panel truck type not used for commercial purposes.
12. War means armed conflict between nations, whether or not declared, civil war, insurrection, rebellion or revolution.
13. You and your means the named insured shown in the declarations or his or her spouse if a resident of the same household.

LOSSES WE WILL PAY FOR YOU

Under Section I, we will pay damages which an insured  becomes legally obligated to pay because of:

1.  Bodily injury  , sustained by a person,.and

2.  Damage to or destruction of property,

arising out of the ownership, maintenance or use of the owned auto  or a non-owned auto  .

We will defend any suit for damages payable under the terms of this policy. We may investigate and settle any claim or suit. We have no duty to investigate or defend any claims which are not covered under the terms of this policy. Our duty to defend ends when the limits of liability for bodily injury liability have been exhausted by payments of judgments or settlements.

ADDITIONAL PAYMENTS WE WILL MAKE UNDER THE LIABILITY COVERAGES

1.  All investigative and legal costs incurred by us.

2.  Interest calculated on that part of a judgment that is within our limit of liability and accruing:

(a)  Before the judgment, where owed by law, and until we pay, offer to pay, or deposit in court the amount due under this coverage;

(b)  After the judgment, and until we pay, offer to pay, or deposit in court, the amount due under this coverage.

3.  Premiums for appeal bonds in a suit we appeal, or premiums for bonds to release attachments; but the face amount of these bonds may not exceed the applicable limit of our liability.

4.  We will upon request by an insured , provide reimbursement for the following items:

(a)  Costs incurred by any insured  for first aid to others at the time of an accident involving an  owned auto  or non-owned auto.

(b)  Loss of earnings up to $50 a day, but not other income, if we request an insured  to attend hearings and trials.

(c)  All reasonable costs incurred by an insured  at our request.

(d)  Premiums for bail bonds paid by an insured  due to traffic law violations arising out of the use of an owned auto , not to exceed $250 per bail bond.

EXCLUSIONS

Section I Does Not Apply:

1.  To any bodily injury  to any insured  or relative  of an insured's  family residing in the insured's  household.

This exclusion does not apply if the insured  or relative  of the insured  is injured as a passenger in a motor vehicle insured under this policy while that vehicle is being driven by a person who is not a relative , nor you .

2.  To any vehicle used to carry passengers or goods for hire. However, a vehicle used in an ordinary car pool on a ride sharing or cost sharing basis is covered.

3.  To liability coverage for any person who intentionally causes  bodily injury  or property damage.

4.  To bodily injury  or property damage that is insured under a nuclear liability policy. This exclusion applies even if the limits of that policy are exhausted.

5.  To bodily injury  or property damage arising from the operation of farm machinery.

6.  To bodily injury  to an employee of an insured  arising out of and in the course of employment by an insured .

However, bodily injury  of a domestic employee of the insured  is covered unless benefits are payable or are required to be provided under a workmen's compensation law.

7.  To bodily injury  to a fellow employee of an insured  (other than you ) injured in the course of his employment if the bodily injury  arises from the use of an auto in the business of his employer, and if benefits are payable under a workmen's compensation policy.

8.  To an owned auto  while used by a person (other than you  or a relative  or your  or your relative's  partner, agent or employee) when he is employed or otherwise engaged in the auto business .

9.  To a non-owned auto  while maintained or used by a person while he is employed or otherwise engaged in any auto business .

However, coverage does apply to a non-owned private passenger auto  used by you , your  chauffeur or a domestic servant, while engaged in the business of an insured .

10. To damage:

(a)  To property owned, or transported by an insured ; or

(b)  To property rented to or in charge of an insured . This exclusion does not apply to a residence or private garage.

11. To an auto acquired by you  during the policy term, if you  have purchased other liability insurance for it.

12. To:

(a)  The United States of America or any of its agencies;

(b)  Any person, including you , if protection is afforded under the provisions of the Federal Tort Claims Act.

13. To any liability assumed under any contract or agreement.

14. To bodily injury  or property damage caused by the insured  in participation and/or preparation for any racing, speed, or demolition contest or stunting activity of any nature, whether or not prearranged or organized.

15. To punitive or exemplary damages, regardless of any other provision of this policy.

PERSONS INSURED

Who Is Covered

Section I applies to the following as Insureds with regard to an owned auto :

1. You;
2. Any other person using the auto with your permission to the extent of that permission;
3. Any other person or organization for his or Its liability because of acts or omissions of an insured under 1. or 2. above.

Section I applies to the following as insureds with regard to a non-owned auto :

1. You and your relatives when driving the non-owned auto . Such use must be with the permission, or reasonably believed to be with the permission, of the owner and to the extent of that permission.
2. A person or organization, not owning or hiring the auto, regarding his or Its liability because of acts or omissions of an insured under 1. above.

The limits of liability stated in the declarations are our maximum obligations regardless of the number of insureds involved in the occurrence.

FINANCIAL RESPONSIBILITY LAWS

When this policy is certified as proof of compliance with the Florida financial responsibility law for the future, this liability insurance will comply with the provisions of that law.

OUT OF STATE COVERAGE

When the policy applies to the operation of a motor vehicle outside of your state, we agree to increase your coverages to the extent required of out-of-state motorists by local law. We will not provide Bodily Injury Liability Coverage under this provision if that coverage is not purchased and shown in the policy declarations. This additional coverage will be reduced to the extent that you are protected by another insurance policy. No person can be paid more than once for any item of loss.

LIMITS OF LIABILITY

Regardless of the number of autos or trailers to which this policy applies:

1. The limit of bodily injury liability stated in the declarations as applicable to "each person" is the limit of our liability for all damages, including damages for care and loss of services, because of bodily injury sustained by one person as the result of one occurrence.
2. The limit of such liability stated in the declarations as applicable to "each occurrence" is, subject to the above provision respecting each person, the total limit of our liability for all such damages, including damages for care and loss of services, because of bodily injury sustained by two or more persons as the result of any one occurrence.
3. The limit of property damage liability stated in the declarations as applicable to "each occurrence" is the total limit of our liability for all damages because of damage to or destruction of the property of one or more persons or organizations, including the loss of use of the property as the result of any one occurrence.
4. If this policy covers two or more autos, the LIMITS OF LIABILITY apply separately to each. An auto and attached trailer are considered to be one auto.

OTHER INSURANCE

Any insurance we provide for losses arising out of the ownership, maintenance or use of a vehicle you do not own shall be excess over any other valid and collectible insurance.

If the insured has other applicable insurance against a loss covered by Section I of this policy, we will not owe more than our pro-rata share of the total coverage available.

CONDITIONS

The following conditions apply to Section I:

1. NOTICE

As soon as possible after an occurrence, written notice must be given us or our authorized agent stating:

(a) The identity of the insured ;
(b) The time, place and details of the occurrence;
(c) The names and addresses of the injured, and of any witnesses; and
(d) The names of the owners and the description and location of any damaged property.

If a claim or suit is brought against an insured , he must promptly send us each demand, notice, summons or other process received.

2. ASSISTANCE AND COOPERATION OF THE INSURED

The insured will cooperate and assist us, if requested:

(a) In the investigation of the occurrence;

(b) In making settlements;

(c) In the conduct of suits;

(d) In enforcing any right of contribution or indemnity against any legally responsible person or organization because of bodily injury   or property damage;

(e) At trials and hearings;

(f) In securing and giving evidence; and

(g) By obtaining the attendance of witnesses.

Only at his own cost will the insured   make a payment, assume any obligation or incur any cost other than for first aid to others.

3.  ACTION AGAINST US

No suit will lie against us:

(a) Unless the insured  has fully complied with all the policy's terms and conditions, and

(b) Until the amount of the insured's  obligation to pay has been finally determined, either:

   (i)  By a final judgment against the insured  after actual trial; or

   (ii) By written agreement of the insured , the claimant and us.

A person or organization or the legal representative of either, who secures a judgment or written agreement, may then sue to recover up to the policy limits.

No person or organization, including the insured , has a right under this policy to make us a defendant in an action to determine the insured's  liability.

Bankruptcy or insolvency of the insured  or of his estate will not relieve us of our obligations.

4.  SUBROGATION

When payment is made under this policy, we will be subrogated to all the insured's  rights of recovery against others. The insured   will help us to enforce these rights. The insured   will do nothing after loss to prejudice these rights.

This means we will have the right to sue for or otherwise recover the loss from anyone else who may be held responsible.

When a person has been paid damages by us under this policy and also recovers from another, that person shall:

(a) Hold in trust for us the amount recovered; and

(b) Reimburse us to the extent of our payment.

SECTION II: PART I -PERSONAL INJURY PROTECTION AND PART IV-AUTOMOBILE MEDICAL PAYMENTS

(Automobile Medical Payments Coverage applies only if a premium amount is shown in the Policy Declarations for "Medical Payments" coverage)

PART I - PERSONAL INJURY PROTECTION

DEFINITIONS

The definitions of the terms insured  and you under Section I apply to Section II also.

1.  Bodily injury   means bodily injury, sickness, or disease to a person, caused by accident, including resulting sickness, disease or death resulting therefrom. All claims for damages arising from  bodily injury   to a person from a single loss shall be considered one bodily injury .

2.  Insured motor vehicle   means a motor vehicle :

(a) Of which you  are the owner , and

(b) With respect to which security is required to be maintained under the Florida Motor Vehicle No-Fault Law, and

(c) For which a premium is charged, or which is a trailer, other than a mobile home, designed for use with a  motor vehicle.

3.  (a) Medical expenses   means reasonable expenses for medically necessary   medical, surgical, x-ray, dental, ambulance, hospital, professional nursing and rehabilitative services for prosthetic devices and for necessary remedial treatment and services recognized and permitted under the laws of the state for an injured person. Reimbursement for medical expenses   shall be limited to and shall not exceed 80% of the schedule of maximum charges as set forth in Florida Statute § 627.736(5) (a) 2.

(b) However, the medical benefits shall provide reimbursement only for such services and care that are lawfully provided, supervised, ordered, or prescribed by a physician licensed under Florida Statutes, Title 32, chapter 458 or chapter 459, a dentist licensed under Florida Statutes, Title 32, chapter 466, or a chiropractic physician licensed under Florida Statutes, Title 32, chapter 460 or that are provided by any of the following persons or entities:

   1. A hospital or ambulatory surgical center licensed under Florida Statutes, Title 29, chapter 395.

   2. A person or entity licensed under Florida Statutes Title 29, chapters 401.2101-401.45 that provides emergency transportation and treatment.

3. An entity wholly owned by one or more physicians licensed under Florida Statutes Title 32, chapter 458 or chapter 459, chiropractic physicians licensed under Florida Statutes, Title 32, chapter 460, or dentists licensed under Florida Statutes, Title 32, chapter 466 or by such practitioner or practitioners and the spouse, parent, child, or sibling of that practitioner or those practitioners.

4. An entity wholly owned, directly or indirectly, by a hospital or hospitals.

5. A health care clinic licensed under Florida Statute Title 29, chapters 400.990-400.995 that is :
   a. Accredited by the Joint Commission on Accreditation of Healthcare Organizations, the American Osteopathic Association, the Commission of Accreditation of Rehabilitation Facilities, or the Accreditation Association for Ambulatory Health Care, Inc.; or
   b. A health care clinic that;
     (I)  Has a medical director licensed under chapter Florida Statute Title 32, chapter 458, chapter 459, or chapter 460;
     (II)  Has been continuously licensed for more than 3 years or is a publicly traded corporation that issues securities traded on an exchange registered with the United States Securities and Exchange Commission as a national securities exchange; and
     (III)  Provides at least four of the following medical specialties:
       (A) General medicine.
       (B) Radiography.
       (C) Orthopedic medicine.
       (D) Physical medicine.
       (E) Physical therapy.
       (F) Physical rehabilitation.
       (G) Prescribing or dispensing outpatient prescription medication.
       (H) Laboratory services.

4. Medically necessary  refers to a medical service or supply that a prudent physician would provide for the purpose of preventing, diagnosing, or treating an illness, injury, disease, or symptom in a manner that is:
   (a) In accordance with generally accepted standards or medical practice;
   (b) Clinically appropriate in terms of type, frequency, extent, site, and duration; and
   (c) Not primarily for the convenience of the patient, physician, or other health care provider.

5. Motor vehicle  means any self-propelled vehicle of four or more wheels which is of a type both designed and required to be licensed for use on the highways of Florida and any trailer or semi-trailer designed for use with such vehicle.

A motor vehicle  does not include:
   (a) Any motor vehicle  which is used in mass transit other than public school transportation and designed to transport more than five passengers exclusive of the operator of the motor vehicle  and which is owned by a municipality, a transit authority, or a political subdivision of the state; or
   (b) A mobile home.

6. Occupying  means in or upon or entering into or alighting from;

7. Owner  means a person or organization who holds the legal title to a motor vehicle ., and also includes:
   (a) A debtor having the right to possession, in the event a motor vehicle  is the subject of a security agreement, and
   (b) A lessee having the right to possession, in the event a motor vehicle  is the subject of a lease with option to purchase and such lease agreement is for a period of six months or more, and
   (c) A lessee having the right to possession, in the event a motor vehicle  is the subject of a lease without option to purchase, and such lease agreement is for a period of six months or more, and the lease agreement provides that the lessee shall be responsible for securing insurance;

8. Pedestrian  means a person while not an occupant of any self-propelled vehicle;

9. Relative  means a person related to you  by blood, marriage or adoption (including a ward or foster child) who is usually a resident of the same household as you ;

10. Replacement services expenses  means with respect to the period of disability of the injured person all expenses reasonably incurred in obtaining from others ordinary and necessary services in lieu of those that, but for such injury, the injured person would have performed without income for the benefit of his household;

11. Work loss  means with respect to the period of disability of the injured person, any loss of income and earning capacity from inability to work proximately caused by the injury sustained by the injured person.

**PAYMENTS WE WILL MAKE**

The Company will pay in accordance with the Florida Motor Vehicle No Fault Law (as enacted, amended, or newly enacted), and in accordance with all fee schedules contained in the Florida Motor Vehicle No Fault Law, to or for the benefit of the injured person:

(a) 80% of medical expenses ; which are medically necessary , pursuant to the following schedule of maximum charges contained in the Florida Statute § 627.736(5) (a) 2:

    1. For emergency transport and treatment by providers licensed under Florida Statutes, Title 29, chapter 401, 200 percent of medicine.

    2. For emergency services and care provided by a hospital licensed under Florida Statutes, Title 29, chapter 395, 75 percent of the hospital's usual and customary charges.

    3. For emergency services and care as defined by Florida Statutes Title 29 chapter 395.002(9) provided in a facility licensed under chapter 395 rendered by a physician or dentist, and related hospital inpatient services rendered by a physician or dentist, the usual and customary charges in the community.

    4. For hospital inpatient services, other than emergency services and care, 200 percent of the Medicare Part A prospective payment applicable to the specific hospital providing the inpatient services.

    5. For hospital outpatient services, other than emergency services and care, 200 percent of the Medicare Part A Ambulatory Payment Classification for the specific hospital providing the outpatient services.

    6. For all other medical services, supplies, and care, 200 percent of the allowable amount under the participating physicians schedule of Medicare Part B. However, if such services, supplies, or care is not reimbursable under Medicare Part B, we may limit reimbursement to 80 percent of the maximum reimbursable allowance under workers' compensation, as determined under Florida Statutes Title 31, chapter 440.13 rules adopted thereunder which are in effect at the time such services, supplies, or care is provided. Services, supplies, or care that is not reimbursable under Medicare or workers' compensation is not required to be reimbursed by us.

(b) 60% of work loss ; and

(c) Replacement services expenses ; and

(d) Death benefits.

The above benefits will be provided for injuries incurred as a result of bodily injury , caused by an accident arising out of the ownership, maintenance or use of a motor vehicle and sustained by:

(1) You or any relative while occupying a motor vehicle or, while a pedestrian through being struck by a motor vehicle ; or

(2) Any other person while occupying the insured motor vehicle or, while a pedestrian , through being struck by the insured motor vehicle .

**EXCLUSIONS**

Section II - Part I does not apply:

1. To you or any relative injured while occupying any motor vehicle owned by you and which is not an insured motor vehicle under this insurance;

2. To any person while operating the insured motor vehicle without your express or implied consent;

3. To any person, if such person's conduct contributed to his bodily injury under any of the following circumstances:

    (i) Causing bodily injury to himself intentionally;

    (ii) While committing a felony;

4. To you or any dependent relative for work loss if an entry in the schedule or declarations indicates such coverage does not apply;

5. To any pedestrian , other than you or any relative , not a legal resident of the State of Florida;

6. To any person, other than you , if such person is the owner of a motor vehicle with respect to which security is required under the Florida Motor Vehicle No-Fault law, as amended;

7. To any person, other than you or any relative , who is entitled to personal injury protection benefits from the owner or owners of a motor vehicle which is not an insured motor vehicle under this insurance or from the owner's insurer; or

8. To any person who sustains bodily injury while occupying a motor vehicle located for use as a residence or premises.

LIMIT OF LIABILITY; APPLICATION OF DEDUCTIBLE; OTHER INSURANCE

Regardless of the number of persons insured, policies or bonds applicable, vehicles involved or claims made, the total aggregate limit of personal injury protection benefits available under the Florida Motor Vehicle No-Fault Law, as amended, from all sources combined, including this policy, for all loss and expense incurred by or on behalf of any one person who sustains bodily injury   as the result of any one accident shall be $10,000; provided that payment for death benefits included in the foregoing shall be equal to the lesser of $5,000 or the remainder of unused personal injury protection benefits per individual.

After the deductible is met, each insured  is eligible to receive up to $10,000 in total benefits described. The amount of any deductible stated in the declarations shall be deducted from all expenses or losses as described in FL Stat. § 627.736 with respect to all medical expenses , replacement services expenses   and work loss  incurred by or on behalf of each person to whom the deductible applies and who sustains bodily injury   as the result of any one accident. Such deductible will not apply to the death benefit.

Any amount available for payment under this insurance shall be reduced by the amount of benefits an injured person has recovered for the same elements of loss under the workmen's compensation laws of any state or the federal government.

If benefits have been received under the Florida Motor Vehicle No-Fault Law, as amended, from any insurer for the same items of loss and expense for which benefits are available under this policy, we shall not be liable to make duplicate payments to or for the benefit of the injured person, but the insurer paying such benefits shall be entitled to recover from us its equitable pro rata share of the benefits paid and expenses incurred in processing the claim.

POLICY PERIOD - TERRITORY

The insurance under this Section applies only to accidents which occur during the policy period:

   (a) In the State of Florida;

   (b) As respects you  or a relative , while occupying  the insured motor vehicle   outside the State of Florida but within the United States of America, its territories or possessions or Canada; and

   (c) As respects pedestrians  injured when struck by the insured motor vehicle    in the State of Florida, if they are not the owner  of a motor vehicle   for which coverage is required to be maintained under the Florida No-Fault Law.

CONDITIONS

1. NOTICE

In the event of an accident, written notice of the loss must be given to us or any of our authorized agents as soon as practicable. If any injured person or his legal representatives shall institute legal action to recover damages for bodily injury   against a third party, a copy of the summons and complaint or other process served in connection with such legal action shall be forwarded as soon as practicable to us by such injured person or his legal representative.

2. ACTION AGAINST THE COMPANY

No action shall lie against us unless, as a condition precedent thereto, there shall have been full compliance with all terms of this insurance, and in accordance with, and subject to the terms, conditions, and exclusions of, the Florida Motor Vehicle No-Fault Law, as amended.

3. PROOF OF CLAIM; MEDICAL REPORTS AND EXAMINATIONS; PAYMENT OF CLAIM WITHHELD

As soon as practicable the person making the claim shall give to us written proof of claim, under oath if required, which may include full particulars of the nature and extent of the injuries and treatment received and contemplated, and such other information as may assist us in determining the amount due and payable. Such person shall submit to mental or physical examinations in accordance with the Florida Motor Vehicle No Fault Law (as enacted, amended, or newly enacted), at our expense when and as often as we may reasonably require and a copy of the medical report shall be forwarded to such person if requested.  If the person unreasonably refuses to submit to an examination, we will not be liable for subsequent personal injury protection benefits.

Whenever a person making a claim is charged with committing a felony, we shall withhold benefits until, at the trial level, the prosecution makes a formal entry on the record that it will not prosecute the case against the person, the charge is dismissed or the person is acquitted.

If requested by us an insured  , or any other person or organization making a claim or seeking payment, must submit to examination under oath (EUO) by any person named by us when, where and as often as we may reasonably require.

This provision includes providing a copy of any documents, forms, records or material requested to be provided as part of the EUO request whether the request is made before, during or after the EUO. If requested by us an insured , or any other person or organization making a claim or seeking payment, if the person unreasonably refuses to submit to an EUO, we will not be liable for personal injury protection benefits.

4. REIMBURSEMENT AND SUBROGATION

In the event of payment to or for the benefits of any injured person under this insurance:

(a) The Company is subrogated to the rights of the person to whom or for whose benefit such payments were made to the extent of such payments. Such person shall execute and deliver the instruments and papers and do whatever else is necessary to secure such rights. Such person shall do nothing after loss to prejudice such rights.

(b) The Company providing personal injury protection benefits on a private passenger motor vehicle, as defined in the Florida Motor Vehicle No-Fault Law, shall be entitled to reimbursement to the extent of the payment of personal injury protection benefits from the owner or insurer of the owner of a commercial motor vehicle, as defined in the Florida Motor Vehicle No-Fault Law, if such injured person sustained the injury while occupying , or while a pedestrian through being struck by, such commercial motor vehicle.

5. SPECIAL PROVISION FOR RENTED OR LEASED VEHICLES

Notwithstanding any provision of this coverage to the contrary, if a person is injured while occupying , or through being struck by, a motor vehicle rented or leased under a rental or lease agreement, within the state of Florida, which does not specify otherwise in at least 10 point type on the face of such agreement, the personal injury protection coverage afforded under the lessor's policy shall be primary. Personal injury protection coverage offered under this policy will not apply to a vehicle rented, operated, used, or leased outside the state of Florida.

PART II - MODIFICATION OF POLICY COVERAGES

Any Automobile Medical Payments insurance, any Uninsured Motorists coverage or any excess Underinsured Motorists coverage afforded by the policy shall be excess over any Personal Injury Protection benefits paid or available for payment or which would be available but for the application of a deductible.

Regardless of whether the full amount of Personal Injury Protection benefits have been exhausted, any Medical Payments insurance afforded by this policy shall pay the portion of any claim for Personal Injury Protection medical expenses which are otherwise covered but not available for payment due to the limitation of 80% of medical expenses contained in Part I but shall not be payable for the amount of the deductible selected.

PART III - PROVISIONAL PREMIUM

It is agreed that in the event of any change in the rules, rates, rating plan, premiums or minimum premiums applicable to the insurance afforded, because of an adverse judicial finding as to the constitutionality of any provisions of the Florida Motor Vehicle No-Fault Law, as amended, providing for the exemption of persons from tort liability, the premium stated in the declarations for any Liability, Medical Payments and Uninsured Motorists insurance shall be deemed provisional and subject to recomputation. If this policy is a renewal policy, such recomputation shall also include a determination of the amount of any return premium previously credited or refunded to the named insured pursuant to the Florida Motor Vehicle No-Fault Law, as amended, with respect to insurance afforded under a previous policy.

If the final premium thus recomputed exceeds the premium stated in the declarations, the insured shall pay to the Company the excess as well as the amount of any return premium previously credited or refunded.

PART IV - AUTOMOBILE MEDICAL PAYMENTS COVERAGE

(Automobile Medical Payments coverage applies only if a premium amount is shown in the Policy Declarations for "Medical Payments" coverage)

DEFINITIONS

The definitions of the terms insured and you under Section I apply to Section II - Part IV also. The definitions under Section II - Part I also apply to Section II - Part IV.

Usual and customary medical charges as used in this Part means charges that are otherwise covered under Section II, Part I of the policy.

Medically necessary as used in this Part means all services which would be covered under Section II, Part I of the policy.

PAYMENTS WE WILL MAKE

Under Automobile Medical Payments coverage, the Company will pay the usual and customary charges for bodily injury , caused by an accident arising out of the ownership, maintenance or use of a motor vehicle and sustained by:

(1) You or any relative while occupying a motor vehicle or, while a pedestrian through being struck by a motor vehicle ; or

(2) Any other occupants of the insured motor vehicle injured in an accident that occurs outside the state of Florida, but within the United States of America, its territories or possessions, or Canada.

In addition, we will pay, subject to the coverage limit:

(a) The portion of any claim for Personal Injury Protection medical expense benefits otherwise covered but not payable due to the coinsurance provision of the Personal Injury Protection provision. This is the 20% of medical expenses not covered in Part I - Payments We Will Make, item (a);

(b) Usual and customary charges incurred for medically necessary services that exceed the Personal Injury Protection medical expense coverage paid and when Personal Injury Protection coverage is exhausted; and

(c) Usual and customary charges incurred by you or any relative for medically necessary services that result from injuries received while occupying a motor vehicle or as a pedestrian in an accident that occurs outside the state of Florida, but within the United States of America, its territories or possessions, or Canada.

## EXCLUSIONS

Automobile Medical Payments coverage does not apply:

1. To you or any relative injured while occupying any motor vehicle owned by you or a relative and which is not an insured motor vehicle under this insurance;

2. To any person while operating the insured motor vehicle without your express or implied consent;

3. To any person, if such person's conduct contributed to his bodily injury under any of the following circumstances:

   (i) Causing bodily injury to himself intentionally;

   (ii) While committing a felony;

4. To any pedestrian , other than you or any relative ; or

5. To any person, other than you , if such person is the owner of a motor vehicle with respect to which security is required under the Florida Motor Vehicle No-Fault Law, as amended;

6. To any person, other than you or a relative , who is entitled to personal injury protection benefits from the owner or owners of a motor vehicle which is not an insured motor vehicle under this insurance or from the owner' s insurer;

7. To any person who sustains bodily injury while occupying a motor vehicle located for use as a residence or premises;

8. To bodily injury sustained by you or a relative that results from war of any kind;

9. To bodily injury sustained by you or a relative that results from exposure to fungi;

10. To bodily injury sustained by you or a relative that results from:

    (i) Nuclear reaction;

    (ii) Radiation or radioactive contamination from any source;

    (iii) The intentional or accidental detonation of, or release of radiation from any nuclear or radioactive device;

11. To bodily injury sustained by you or a relative while occupying a motor vehicle , or while a pedestrian through being struck by a motor vehicle while being employed or engaged in the business of selling, leasing, repairing, parking, storing, servicing, delivering or testing vehicles. However, this exclusion does not apply to you or a relative , or an agent or employee of you or a relative , when using the insured motor vehicle.

12. To bodily injury sustained by you or a relative caused by the insured in participation and/or preparation for any racing, speed or demolition contest or stunting activity of any nature, whether or not prearranged or organized.

## LIMITS OF LIABILITY

Regardless of the number of persons insured, policies or bonds applicable, vehicles involved or claims made, the total aggregate limit of Automobile Medical Payments benefits available from all sources combined, including this policy, for all loss and expense incurred by or on behalf of any one person who sustains bodily injury as the result of any one accident is the amount listed in the declarations page.

## OTHER INSURANCE

Any amount available for payment under this insurance shall be reduced by the amount of benefits an injured person has recovered for the same elements of loss under the workmen's compensation or other similar laws of any state or the federal government.

If benefits have been received under any similar coverage from any insurer for the same items of loss and expense for which benefits are available under this policy, we shall not be liable to make duplicate payments to or for the benefit of the injured person, but the insurer paying such benefits shall be entitled to recover from us its equitable pro rata share of the benefits paid and expenses incurred in processing the claim. This coverage will coordinate with any applicable Personal Injury Protection benefits but will not duplicate any benefits available for payment. The coverage of the occupied vehicle is primary.

Any Uninsured Motorist Coverage or any excess Underinsured Motorist Coverage afforded by this policy shall be excess over any Automobile Medical Payments benefits paid or available for payment or which would be available but for the application of a deductible; and subject to the terms and conditions of the Uninsured/Underinsured Motorist coverage.

## POLICY PERIOD - TERRITORY

The insurance under this Part applies only to accidents which occur during the policy period:

(a) In the State of Florida; and

(b) We will cover you or any relative for injuries incurred while occupying a motor vehicle or as a pedestrian in an accident that occurs outside the state of Florida, but within the United States of America, its territories or possessions, or Canada. This coverage is excess over any other valid and collectible insurance provided with respect to the occupied motor vehicle .

CONDITIONS

1. NOTICE

In the event of an accident, written notice of the loss must be given to us or any of our authorized agents as soon as practicable. If any injured person or his legal representatives shall institute legal action to recover damages for bodily injury against a third party, a copy of the summons and complaint or other process served in connection with such legal action shall be forwarded as soon as practicable to us by such injured person or his legal representative.

2. PROOF OF CLAIM; MEDICAL REPORTS AND EXAMINATIONS; PAYMENT OF CLAIM WITHHELD

As soon as practicable the person making the claim shall give to us written proof of claim, under oath if required, which may include full particulars of the nature and extent of the bodily injury and treatment received and contemplated, and such other information as may assist us in determining the amount due and payable. Such person shall submit to mental or physical examinations at our expense when and as often as we may reasonably require and a copy of the medical report shall be forwarded to such person if requested. If the person unreasonably refuses to submit to an examination, we will not be liable for subsequent Automobile Medical Payment benefits.

Whenever a person making a claim is charged with committing a felony, we shall withhold benefits until, at the trial level, the prosecution makes a formal entry on the record that it will not prosecute the case against the person, the charge is dismissed or the person is acquitted.

We also have the right to determine if incurred charges and treatment are reasonable, medically necessary and causally related to a bodily injury sustained in an accident. This determination may be made by use of utilization review, peer reviews, medical bill reviews or medical examination. We will also have the right to determine if incurred charges are usual and customary charges and if treatment is medically necessary .

If requested by us an insured , or any other person or organization making a claim or seeking payment, must submit to examination under oath (EUO) by any person named by us when, where and as often as we may reasonably require.

This provision includes providing a copy of any documents, forms, records or material requested to be provided as part of the EUO request whether the request is made before, during or after the EUO. If requested by us an insured ,. or any other person or organization making a claim or seeking payment, if the person unreasonably refuses to submit to an EUO, we will not be liable for medical payments benefits.

3. ACTION AGAINST THE COMPANY

No action shall lie against us:

(a) Unless the insured has fully complied with all the policy' s terms and conditions; and
(b) Until 30 days after the required notice of accident and reasonable proof of claim has been filed with us; and
(c) Unless we receive written notice of the intent to initiate litigation and within 30 days after receipt of such notice we do not:
    (i) Pay the claim; or
    (ii) Mail to the person filing the notice a written statement of our agreement to pay for such treatment in accordance with the notice.

Payment or our written statement of agreement to pay for treatment shall be treated as being made on the date a draft, or other valid instrument that is equivalent payment, or the written statement of agreement to pay, is placed in the United States mail properly addressed posted envelope or if not so posted, on the date of delivery.

The written notice of intent to initiate litigation must state that it is a demand letter for Automobile Medical Payments coverage and contain the following information:

(a) The name of the insured for whom benefits are being sought including a copy of the assignment giving rights to the claimant if the claimant is not the insured;
(b) The claim number and or policy number upon which the claim was originally submitted; and
(c) To the extent applicable, the name of the medical provider who rendered the treatment, services, accommodations or supplies that form the basis of the claim, and each exact amount, the date of treatment, service or accommodation and the type of benefits claimed to be due. A health insurance claim form (CMS-1500) or UB 92 form or any other standard form approved by the Department of Financial Services, may be used as the itemized statement.

The written notice must be delivered to us by United States Certified or Registered mail, Return Receipt Requested, at the address we have filed with and that is made available by the office of the Florida Chief Financial Officer on its internet website.

4.  SUBROGATION

In the event of payment to or for the benefits of any injured person under this insurance the Company is subrogated to the rights of the person to whom or for whose benefit such payments were made to the extent of such payments. Such person shall execute and deliver the instruments and papers and do whatever else is necessary to secure such rights. Such person shall do nothing after loss to prejudice such rights.

When an injured person has been paid by us and also recovers from another, the amount recovered will be held by the injured person in trust for us and reimbursed to us to the extent of our payment. If we are not reimbursed, we may pursue recovery of that amount directly against the injured person.

## SECTION III - PHYSICAL DAMAGE COVERAGES
### Your Protection For Loss Or Damage To Your Car

DEFINITIONS

The definitions of the terms auto business, farm auto , non-owned auto , private passenger auto , relative , temporary substitute auto , utility auto , you , your , and war under Section I apply to Section III also. Under this Section, the following special definitions apply:

1.  Actual cash value  is the replacement cost of the auto or property less depreciation  or betterment .
2.  Betterment  is improvement of the auto or property to a value greater than its pre-loss condition.
3.  Collision  means loss caused by upset of the covered auto or its collision with another object, including an attached vehicle.
4.  Comprehensive  means loss  caused other than by collision  and includes the following causes:

    (a) Missiles;
    (b) Falling objects;
    (c) Fire;
    (d) Lightning;
    (e) Theft;
    (f) Larceny;
    (g) Explosion;
    (h) Earthquake;
    (i) Windstorm;
    (j) Hail;
    (k) Water;
    (l) Flood;
    (m) Malicious mischief;
    (n) Vandalism;
    (o) Riot;
    (p) Civil commotion; or
    (q) Colliding with a bird or animal.

5.  Custom parts or equipment  means paint, equipment, devices, accessories, enhancements, and changes, other than those which are original manufacturer installed, which:

    (a) Are permanently installed or attached; or
    (b) Alter the appearance or performance of a vehicle.

    This includes any electronic equipment, antennas, and other devices used exclusively to send or receive audio, visual, or data signals, or to play back recorded media, other than those which are original manufacturer installed, that are permanently installed in the owned auto  or a newly acquired vehicle using bolts or brackets, including slide-out brackets.

6.  Depreciation  means a decrease or loss in value to the auto or property because of use, disuse, physical wear and tear, age, outdatedness, or other causes.:
7.  Insured  means:

    (a) Regarding the owned auto :

        (i)  You and your relatives  ;
        (ii) A person or organization maintaining, using or having custody of the auto with  your  permission, if his use is within the extent of that permission.

    (b) Regarding a non-owned auto, you    and your relatives  , when driving the auto, if the actual operation or use is with the permission or reasonably believed to be with the permission of the owner and within the extent of that permission.

8. Loss means direct and accidental loss of or damage to:
   (a) An owned or non-owned auto , including its equipment; or
   (b) Other property insured under this section.
9. Owned auto means:
   (a) Any vehicle described in this policy for which a specific premium charge indicates there is physical damage coverage;
   (b) A private passenger , farm or utility auto or a trailer , ownership of which you acquire during the policy period or for which you enter into a lease during the policy period for a term of six months or more, if
       (i) It replaces an owned auto as described in (a) above, or
       (ii) We insure all private passenger , farm, and utility autos owned by you on the date of the acquisition and you ask us to add it to the policy no more than 30 days later;
   (c) A temporary substitute auto .
10. Trailer means a trailer designed to be towed by a private passenger auto and not used as a home, residence, office, store, display or passenger trailer. Trailer does not mean a trailer with built-in sleeping facilities designed for recreational or camping use.

## LOSSES WE WILL PAY

Comprehensive  (Excluding Collision  )

1. We will pay for each loss , less the applicable deductible, caused other than by collision to the owned or non-owned auto . This includes glass breakage.

   No deductible will apply to loss to windshield glass.

   At the option of the insured , breakage of glass caused by collision may be paid under the Collision coverage, if included in the policy.

2. We will pay, up to $200 per occurrence, less the applicable deductible, for loss to personal effects due to:
   (a) Fire;
   (b) Lightning;
   (c) Flood;
   (d) Falling objects;
   (e) Earthquake;
   (f) Explosion; or
   (g) Theft of the entire automobile.

   The property must be owned by you or a relative , and must be in or upon an owned auto .

3. Losses arising out of a single occurrence shall be subject to no more than one deductible.

Collision

1. We will pay for collision loss to the owned auto for the amount of each loss less the applicable deductible and to the non-owned auto for the amount of each loss less the applicable deductible when driven by you or a relative .

2. We will pay up to $200 per occurrence, less the applicable deductible, for loss to personal effects due to a collision . The property must be owned by you or a relative , and must be in or upon an owned auto .

3. Losses involving one owned auto , arising out of a single occurrence shall be subject to no more than one deductible.

4. If more than one owned auto or non-owned auto is involved in a collision loss , any deductible will apply separately to each owned auto or non-owned auto.

## ADDITIONAL PAYMENTS WE WILL MAKE UNDER THE PHYSICAL DAMAGE COVERAGES

1. We will reimburse the insured for transportation expenses incurred during the period beginning 48 hours after a theft of the entire auto covered by Comprehensive coverage under this policy has been reported to us and the police. Reimbursement ends when the auto is returned to use or we pay for the loss .

   Reimbursement will not exceed $30.00 per day nor $900.00 per loss .

2. We will pay general average and salvage charges for which the insured becomes legally liable when the auto is being transported.

## EXCLUSIONS

Section III Does Not Apply:

1. To an auto used to carry passengers or goods for hire is not covered. However, a vehicle used in an ordinary car pool on a ride sharing or cost sharing basis is covered.

2. To loss due to war.

3. To loss to a non-owned auto when used by the insured in the auto business .
4. To loss caused by and limited to wear and tear, freezing, mechanical or electrical breakdown or failure, unless that damage results from a covered theft.
5. To road damage to tires.
6. To loss due to radioactivity.
7. To loss to any tape, wire, record disc or other medium for use with a device designed for the recording and/or reproduction of sound.
8. To loss to any radar detector.
9. To any vehicle or trailer when used for business or commercial purposes other than a farm auto .
10. To loss for custom parts or equipment    unless the existence of those custom parts or equipment    has been previously reported to us and an endorsement to the policy has been added.
11. To any liability assumed under any contract or agreement.
12. To any loss resulting from:
    (a) The acquisition of a stolen vehicle;
    (b) Any governmental, legal or other action to return a vehicle to its legal, equitable, or beneficial owner, or anyone claiming an ownership interest in the vehicle; or
    (c) Any confiscation, seizure or impoundment of a vehicle by governmental authorities.
    . (d) The sale of an owned auto .
13. To the destruction, impoundment, confiscation or seizure of a vehicle by governmental or civil authorities due to its use by you , a relative or a permissive user of the vehicle in illegal activity.
14. To any loss caused by the insured in participation and/or preparation for any racing, speed, or demolition contest or stunting activity of any nature, whether or not prearranged or organized.

LIMIT OF LIABILITY

The limit of our liability for loss :
1. Is the actual cash value of the property at the time of the loss ;
2. Will not exceed the prevailing competitive price to repair or replace the property at the time of loss , or any of its parts, including parts from non-original equipment manufacturers, with other of like kind and quality and will not include compensation for any diminution of value that is claimed to result from the loss. Although you have the right to choose any repair facility or location, the limit of liability for repair or replacement of such property is the prevailing competitive price which is the price we can secure from a competent and conveniently located repair facility. At your request, we will identify a repair facility that will perform the repairs or replacement at the prevailing competitive price;
3. To personal effects arising out of one occurrence is $200;
4. To a trailer not owned by you is $500;
5. For custom parts or equipment    is limited to the actual cash value of the custom parts or equipment    , not to exceed the actual cash value of the vehicle.
    Actual cash value or betterment of property will be determined at the time of the loss and will include an adjustment for depreciation/betterment    and for the physical condition of the property.
6. If this policy covers two or more autos or trailers any deductibles will apply separately to each.

OTHER INSURANCE

If the insured has other insurance against a loss covered by Section III, we will not owe more than our pro rata share of the total coverage available. Any insurance we provide for a vehicle you do not own shall be excess over any other valid and collectible insurance.

CONDITIONS

The following conditions apply only to the Physical Damage coverages:
1. NOTICE
   As soon as possible after a loss , written notice must be given us or our authorized agent stating:
    (a) The identity of the insured ;
    (b) A description of the auto or trailer ;
    (c) The time, place and details of the loss ; and
    (d) The names and addresses of any witnesses.
   In case of theft, the insured must promptly notify the police.

2. **ASSISTANCE AND COOPERATION OF THE INSURED**

The insured will cooperate and assist us, if requested:

(a) In the investigation of the loss;
(b) In making settlements;
(c) In the conduct of suits;
(d) In enforcing any right of subrogation against any legally responsible person or organization;
(e) At trials and hearings;
(f) In securing and giving evidence; and
(g) By obtaining the attendance of witnesses.

3. **ACTION AGAINST US**

Suit will not lie against us unless the policy terms have been complied with and until 30 days after proof of loss is filed and the amount of loss is determined.

If we retain salvage, we have no duty to preserve or otherwise retain the salvage for any purpose, including as evidence for any civil or criminal proceeding. If you ask us immediately after a loss to preserve the salvage for inspection, we will do so for a period not to exceed 30 days. You may purchase the salvage from us if you wish.

4. **INSURED'S DUTIES IN EVENT OF LOSS**

In the event of loss the insured will:

(a) Protect the auto, whether or not the loss is covered by this policy. Further loss due to the insured's failure to protect the auto will not be covered. Reasonable expenses incurred for this protection will be paid by us.
(b) File with us, within 91 days after loss, his sworn proof of loss including all information we may reasonably require.
(c) At our request, the insured will exhibit the damaged property and submit to examination under oath.

5. **APPRAISAL**

If we and the insured do not agree on the amount of loss, either may, within 60 days after proof of loss is filed, request an appraisal of the loss. Both parties must agree to the appraisal at the time of dispute. In that event, we and the insured will each select a competent appraiser. The appraisers will select a competent and disinterested umpire. The appraisers will state separately the actual cash value and the amount of the loss. If they fail to agree, they will submit the dispute to the umpire. An award in writing of any two will determine the amount of loss. We and the insured will each pay his chosen appraiser and will bear equally the other expenses of the appraisal and umpire. We will not waive our rights by any of our acts relating to appraisal.

6. **PAYMENT OF LOSS**

We may at our option:

(a) Pay for the loss; or
(b) Repair or replace the damaged or stolen property.

At any time before the loss is paid or the property replaced, we may return any stolen property to you or to the address shown in the declarations at our expense with payment for covered damage. We may take all or part of the property at the agreed or appraised value, but there will be no abandonment to us. We may settle claims for loss either with the insured or the owner of the property.

7. **NO BENEFIT TO BAILEE**

This insurance does not apply directly or indirectly to the benefit of a carrier or other bailee for hire liable for the loss of the auto.

8. **SUBROGATION**

When payment is made under this policy, we will be subrogated to all the insured's rights of recovery, to the extent of our payment against others. The insured will help us to enforce these rights. The insured will do nothing after loss to prejudice these rights.

This means we will have the right to sue for or otherwise recover the loss from anyone else who may be held responsible.

9. **ASSIGNMENT**

With respect to Section III, Physical Damage Coverages, an Assignment of interest under this policy will not bind us without our consent. Any nonconforming assignment shall be void and invalid. Moreover, the assignee of a nonconforming assignment shall acquire no rights under this contract and we shall not recognize any such assignment.

## SECTION IV - UNINSURED MOTORIST COVERAGE
### Protection For   You And Your Passengers For Injuries Caused By Uninsured And Hit-And-Run Motorist

UNLESS AMENDED WITH THE STACKED OR NON-STACKED UNINSURED/UNDERINSURED AMENDMENT, YOU ELECTED NOT TO PURCHASE CERTAIN VALUABLE COVERAGE, WHICH WOULD HAVE PROTECTED YOU AND YOUR FAMILY WHEN INVOLVED, IN A COVERED LOSS WITH AN UNINSURED/ UNDERINSURED MOTORIST.

THIS POLICY DOES NOT PROVIDE UNINSURED/UNDERINSURED MOTORISTS BENEFITS.

Uninsured/underinsured motorist benefits are designed to provide protection when          you  or  your  family  are involved in an accident with an uninsured/underinsured motorist     .

## SECTION V- GENERAL CONDITIONS
### These conditions Apply To all coverages In This Policy

1. **TERRITORY - POLICY PERIOD**

   This policy applies only to accidents, occurrences or losses during the policy period within the United States of America, its territories and possessions, or Canada and while an owned auto  is being transported between ports thereof.

   Unless otherwise cancelled, this policy will expire as shown in the declarations. But, it may be continued by our offer to renew and your  acceptance prior to the expiration date. Each period will begin and expire at 12:01 A.M. local time at your  address stated in the declarations.

2. **PREMIUM**

   When you  dispose of, acquire ownership of, or replace a private passenger , farm or utility auto , any necessary premium adjustment will be made as of the date of the change and in accordance with our manuals.

3. **CHANGES**

   The terms and provisions of this policy cannot be waived or changed, except by an endorsement issued to form a part of this policy.

   We may revise this policy during its term to provide more coverage without an increase in premium. If we do so, your  policy will automatically include the broader coverage when effective in  your  state.

   The premium for each auto is based on the information we have in  your  file. You  agree:

   (a) That we may adjust your  policy premiums during the policy term if any of this information on which the premiums are based is incorrect, incomplete or changed.

   (b) That you  will cooperate with us in determining if this information is correct and complete.

   (c) That you  will notify us of any changes in this information.

   Any calculation or recalculation of your  premium or changes in your  coverage will be based on the rules, rates and forms on file, if required, for our use in  your  state.

4. **ASSIGNMENT**

   Assignment of interest under this policy will not bind us without our consent.

   If you  die, this policy will cover:

   (a) Your  surviving spouse;

   (b) The executor or administrator of your  estate, but only while acting within the scope of his duties;

   (c) Any person having proper temporary custody of the owned auto , as an insured , until the appointment and qualification of the executor or administrator of  your  estate; and

   (d) Under the Medical Payments coverage, a person who was a relative  at the time of your  death, if a premium is shown on the Policy Declarations for Medical Payments.

5. **CANCELLATION BY THE INSURED**

   You  may cancel this policy by providing notice to us stating when, after the notice, cancellation will be effective. However, you  may not cancel during the first two months immediately following  your  policy's effective date except:

   (a) Upon total destruction of all of the owned autos ;

   (b) Upon transfer of ownership of all of the owned autos ;

   (c) If you  obtained a replacement policy covering an owned auto  elsewhere; or

   (d) When we notify you  that the premium charged must be increased to comply with our rate filings or the applicable laws of Florida, you  have the following options:

   1. Upon receipt of your  bill you  may pay the difference in premium and keep the policy as it stands with the corrected premium; or

   2. You  may cancel this policy within 10 days from the receipt of our notice and receive a refund of any unearned premium; or

   3. Your  failure to respond timely or pay the additional premium charged will result in the cancellation of  your  policy when all paid premiums are exhausted.

If this policy is cancelled, you may be entitled to a premium refund. The premium refund, if any, will be computed on a pro-rated basis according to our manuals.

6.  CANCELLATION BY US

We may cancel this policy by mailing to you, at the address shown in this policy, written notice stating when the cancellation will be effective. This notice will be mailed by United States Post Office certificate of mailing.

We will mail this notice:

(a)  10 days in advance if the proposed cancellation is for nonpayment of premium or any of its installments when due;

(b)  45 days in advance in all other cases.

The mailing or delivery of the above notice will be sufficient proof of notice. The policy will cease to be in effect as of the date and hour stated in the notice.

If this policy is cancelled, you may be entitled to a premium refund. The premium refund, if any, will be computed on a pro-rated basis according to our manuals.

Payment or tender of unearned premium is not a condition of cancellation.

7.  CANCELLATION BY US IS LIMITED

After this policy has been in effect for 60 days or, if the policy is a renewal, effective immediately, we will not cancel unless:

(a)  You do not pay the premiums for this policy or any installment when due to us or our agent; or

(b)  Any insured has had his driver's license or motor vehicle registration under suspension or revocation; either:

(i)  During the current policy period; or

(ii)  During the preceding 180 days if this is a new policy; or

(c)  There has been fraud or material misrepresentation under the policy in your application or in making a claim.

We will not cancel a new policy during the first 60 days immediately following the effective date of the policy for nonpayment of premium unless the reason for the cancellation is the issuance of a payment for the premium that is dishonored for any reason. If the initial payment on the policy is dishonored, we will not declare the policy void without providing you with notice of your right to cure the nonpayment as required by Florida law.

Nothing in this section will require us to renew this policy.

8.  RENEWAL

We guarantee to renew this policy for private passenger, farm or utility autos as long as all the following conditions are met:

1.  You (or your spouse) are at least 50 years old and you (or your spouse) are a principal operator of an auto insured under this policy. There are no principal or occasional operators under the age of 25.

2.  You and all operators of autos insured under this policy must be physically and mentally able to safely operate an auto. We may require an operator to provide certification of this from a doctor acceptable to us.

3.  The autos insured are principally located in a state which has approved the use of this condition, and that state continues to approve the use on this condition.

4.  The representations provided in your application for this policy were true.

If these requirements are not met, the guaranteed renewal condition does not apply. We reserve the right to terminate this guaranty in any state in which conditions require that we discontinue writing new and renewal policies for all our insureds. Should we choose not to renew, we will mail to you, at the address shown in this policy, written notice of our refusal to renew at least 45 days prior to the expiration date. This notice will be mailed by United States Post Office certificate of mailing. The mailing or delivery of this notice will be sufficient proof of notice.

If you:

(1)  do not pay the premium as required to renew this policy; or

(2)  have informed us or our agent that you wish the policy cancelled or not renewed; or

(3)  do not accept our offer to renew;

it will be construed to mean that you have refused our renewal offer and the policy will expire without notice.

If this policy has been in effect for 5 years or more we will not refuse to renew solely because an insured was involved in a single traffic accident.

9.  NON-RENEWAL

We agree that we will not refuse to renew or continue this policy unless a written notice of our refusal to renew or continue is mailed to you, at the address shown in the policy, at least 45 days prior to the expiration notice. This notice will be mailed by United States Post Office certificate of mailing. The mailing or delivery of this notice will be sufficient proof of notice.

10. MEDIATION OF CLAIMS

In the event of a claim for bodily injury   amounting to $10,000 or less, or any property damage claim, either party may demand mediation of the claim, provided that suit has not yet been filed.  Only one mediation may be demanded for each claim, unless both parties agree to more than one mediation.  Mediation is not binding on either party.

A request for mediation shall be filed with the Department of Financial Services on a form approved by the Department.  The request for mediation shall state the reason for the request and the issues in dispute which are to be mediated.  The Department of Financial Services will appoint the mediator to conduct the mediation.  Each party may once reject the mediator selected by the Department, either originally or after the opposing side has exercised its option to reject a mediator.  Each party participating in the mediation must have the authority to make a binding decision.  All parties must mediate in good faith.

The cost of the mediation, as set by the Department of Financial Services is shared equally by the parties.  Costs incurred by a party in preparing for or attending the mediation are paid by the party incurring that cost.

11. OTHER INSURANCE

If other insurance is obtained on your owned auto  , any similar insurance afforded under this policy for that auto will terminate on the effective date of the other insurance.

12. ACTION AGAINST US

Persons other than the insured  covered by this policy, may not name us as a defendant prior to first obtaining a judgment against an insured .

13. DIVIDEND PROVISION

You are entitled to share in a distribution of the surplus of the Company as determined by its Board of Directors from time to time.

14. DECLARATIONS

By accepting this policy, you  agree that:

(a) The statements in your  application and in the declarations are your  agreements and representations;
(b) This policy is issued in reliance upon the truth of these representations; and
(c) This policy, along with the application and declaration sheet, embodies all agreements relating to this insurance. The terms of this policy cannot be changed orally.

15. FRAUD AND MISREPRESENTATION

Coverage is not provided to any person who knowingly conceals or misrepresents any material fact or circumstance relating to this insurance:

1.   At the time application is made; or
2.   At any time during the policy period; or
3.   In connection with the presentation or settlement of a claim.

16. EXAMINATION UNDER OATH (EUO)

The insured,  or any other person or organization seeking coverage under this policy must submit to examination under oath by any person named by us when, where and as often as we may reasonably require. This provision includes providing a copy of any documents, forms, records, or materials requested to be provided as part of the EUO request whether the request is made before, during or after the EUO.

17. TERMS OF POLICY CONFORMED TO STATUTES

Any terms of this policy in conflict with the statutes of Florida are amended to conform to those statutes.

18. CHOICE OF LAW

The policy and any amendment(s) and endorsement(s) are to be interpreted pursuant to the laws of the state of Florida.

## SECTION VI- AMENDMENTS AND ENDORSEMENTS

1. **SPECIAL ENDORSEMENT UNITED STATES GOVERNMENT EMPLOYEES**

A. Under the Property Damage coverage of Section I, we provide coverage to United States Government employees, civilian or military, using

    1. Motor vehicles owned or leased by the United States Government or any of its agencies, or

    2. Rented motor vehicle used for United States Government business,

when such use is with the permission of the United States Government. Subject to the limits describe in paragraph B. below, we will pay sums you are legally obligated to pay for damage to these vehicles.

B. The following limits apply to this coverage:

    1. A $100 deductible applies to each occurrence.

    2. For vehicles described in A.1. above, our liability shall not exceed the lesser of the following:

        (a) The actual cash value of the property at the time of the occurrence; or

        (b) The cost to repair or replace the property, or any of its parts with other of like kind and quality; or

        (c) Two months basic pay of the insured ; or

        (d) The limit of Property Damage liability coverage stated in the declarations.

    3. For vehicles described in A.2. above, our liability shall not exceed the lesser of the following:

        (a) The actual cash value of the property at the time of the occurrence; or

        (b) The cost to repair or replace the property, or any of it parts with other of like kind and quality; or

        (c) The limit of Property Damage liability coverage stated in the declarations.

This insurance is excess over other valid and collectible insurance.

W. C. E. Robinson
Secretary

O. M. Nicely
President

 **GEICO.**

# Automobile Policy Amendment

Policy Number:

Your policy is amended as follows:

**SECTION V - GENERAL CONDITIONS**
Item 1. - TERRITORY - POLICY PERIOD -   The 2nd paragraph is revised as follows:
Unless otherwise cancelled, this policy will expire as shown in the declarations.  But, it may be continued by our offer to renew and your  acceptance by payment of the required renewal premium prior to the expiration date.  Each period will begin and expire as stated in the declarations.

We affirm this amendment.

W. C. E. Robinson
Secretary

William E. Roberts
President

A54ED (03-14)

# GEICO

**Automobile Policy Amendment**
FLORIDA

Policy Number:

Your policy is amended as follows:

## SECTION I - LIABILITY COVERAGES

### EXCLUSIONS

Section I Does Not Apply:

The following exclusions are revised as follows:

1. To any bodily injury   to any insured  or any member of an insured's family residing in the insured's household. This exclusion does not apply if you  or your relative  is injured as a passenger in a motor vehicle insured under this policy while that vehicle is being driven by a person who is neither  you  nor your relative .

2. To bodily injury   or property damage arising out of the ownership, maintenance, or use of any vehicle or  trailer  while being used to carry persons or property for compensation or a fee, including but not limited to the delivery of food or any other products. However, a vehicle used in an ordinary car pool is covered.

## SECTION III - PHYSICAL DAMAGE COVERAGES

### DEFINITIONS

The following definition is added:

11. Personal vehicle sharing program     means a business, organization, network or group facilitating the sharing of private passenger motor vehicles for use by individuals or businesses.

### EXCLUSIONS

Section III Does Not Apply:

The following exclusion is revised:

1. To loss  arising out of the ownership, maintenance, or use of any vehicle or  trailer  while being used to carry persons or property for compensation or a fee, including but not limited to the delivery of food or any other products. However, a vehicle used in an ordinary car pool is covered.

The following exclusion is added:

15. While any motor vehicle is operated, maintained or used, other than by  you  or a relative , as part of personal vehicle sharing facilitated by a personal vehicle sharing program   .

## SECTION V - GENERAL CONDITIONS

These Conditions Apply To All Coverages In This Policy

7.  CANCELLATION BY US IS LIMITED

The following language has been deleted:

If the initial payment on the policy is dishonored, we will not declare the policy void without providing  you  with notice of your  right to cure the nonpayment as required by Florida law.

The following paragraph has been added:

We will not cancel a policy based on the lawful use, possession, or ownership of a firearm or ammunition by the insured or a household member of the insured .

8. RENEWAL

The following paragraph has been added:

We will not refuse to renew or continue this policy based on the lawful use, possession, or ownership of a  firearm or ammunition by the insured or a household member of the insured.

We affirm this amendment.

W. C. E. Robinson
Secretary

William E. Roberts
President

A54FL (05-14)

# GEICO

FLORIDA POLICY AMENDMENT

Policy Number:

Your policy is amended as follows:

SECTION II - Personal Injury Protection Coverage   is replaced in its entirety with the following:

PART I - PERSONAL INJURY PROTECTION

DEFINITIONS

1. Bodily Injury   means bodily injury, sickness, or disease to a person, caused by accident, including resulting sickness, disease or death resulting therefrom. All claims for damages arising from  bodily injury   to a person from a single loss shall be considered one bodily injury  .

2. Disability benefits   means sixty percent (60%) of any loss of gross income and loss of earning capacity per individual from inability to work proximately caused by the injury sustained by the injured person, plus all expenses reasonably incurred in obtaining from others ordinary and necessary services in lieu of those that, but for the injury, the injured person would have performed without income for the benefit of his or her household.

3. Emergency medical condition   means a medical condition manifesting itself by acute symptoms of sufficient severity, which may include severe pain, such that the absence of immediate medical attention could reasonably be expected to result in any of the following:
   (a) Serious jeopardy to patient health;
   (b) Serious impairment to bodily functions; or
   (c) Serious dysfunction of any bodily organ or part.

4. Entity wholly owned   means a proprietorship, group practice, partnership, or corporation that provides health care services rendered by licensed health care practitioners and in which licensed health care practitioners are the business owners of all aspects of the business entity, including, but not limited to, being reflected as the business owners on the title or lease of the physical facility, filing taxes as the business owners, being account holders on the entity's bank account, being listed as the principals on all incorporation documents required by this state, and having ultimate authority over all personnel and compensation decisions relating to the entity. However, this definition does not apply to an entity that is wholly owned, directly or indirectly, by a hospital licensed under Florida Statutes, chapter 395.

5. Insured  means:
   (a) You or any relative  while occupying  a motor vehicle  or, while a pedestrian  through being struck by a motor vehicle ; or
   (b) Any other person while occupying  the insured-motor-vehicle  or, while a pedestrian  , through being struck by the insured-motor-vehicle  .

6. Insured-motor-vehicle   means a motor vehicle  :
   (a) Of which you  are the owner , and
   (b) With respect to which security is required to be maintained under the Florida Motor Vehicle No-Fault Law, and
   (c) For which a premium is charged by us, or which is a trailer, other than a mobile home, designed for use with a motor vehicle.

7. Medical benefits   means all reasonable expenses for medically necessary  medical, surgical, X-ray, dental, and rehabilitative services, including prosthetic devices and  medically necessary  ambulance, hospital, and nursing services if the individual receives initial services and care pursuant to paragraph (a) within 14 days after the motor vehicle accident. The medical benefits  provide reimbursement only:
   (a) For initial services and care that are lawfully provided, supervised, ordered, or prescribed by a physician licensed under Florida Statutes, chapter 458 or chapter 459, a dentist licensed under Florida Statutes, chapter 466, or a chiropractic physician licensed under Florida Statutes, chapter 460 or that are provided in a hospital or in a facility that owns, or is wholly owned by, a hospital. Initial services and care may also be provided by a person or entity licensed under part III of Florida Statutes, chapter 401 which provides emergency transportation and treatment.
   (b) Upon referral by a provider described in paragraph (a), for follow up services and care consistent with the underlying medical diagnosis rendered pursuant to paragraph (a) which may be provided, supervised, ordered, or prescribed only by a physician licensed under Florida Statutes, chapter 458 or chapter 459, a chiropractic physician licensed under Florida Statutes, chapter 460, a dentist licensed under Florida Statutes, chapter 466, or, to the extent permitted by applicable law and under the supervision of such physician, osteopathic physician, chiropractic physician, or dentist, by a physician assistant licensed under Florida Statutes, chapter 458 or chapter 459 or an advanced registered nurse practitioner licensed under Florida Statutes, chapter 464.

(c) Follow up services and care may also be provided by any of the following persons or entities:
1. A hospital or ambulatory surgical center licensed under Florida Statutes, chapter 395.
2. An entity wholly owned   by one or more physicians licensed under Florida Statutes, chapter 458 or chapter 459, chiropractic physicians licensed under Florida Statutes, chapter 460, or dentists licensed under Florida Statutes, chapter 466 or by such practitioners and the spouse, parent, child, or sibling of such practitioners.
3. An entity that owns or is wholly owned, directly or indirectly, by a hospital or hospitals.
4. A physical therapist licensed under Florida Statutes, under chapter 486, based upon a referral by a provider described in paragraph (b) under medical benefits  .
5. A health care clinic licensed under Florida Statutes, part X of chapter 400 which is accredited by the Joint Commission on Accreditation of Healthcare Organizations, the American Osteopathic Association, the Commission on Accreditation of Rehabilitation Facilities, or the Accreditation Association for Ambulatory Health Care, Inc., or
   (a) Has a medical director licensed under Florida Statutes, chapter 458, chapter 459, or chapter 460;
   (b) Has been continuously licensed for more than 3 years or is a publicly traded corporation that issues securities traded on an exchange registered with the United States Securities and Exchange Commission as a national securities exchange; and
   (c) Provides at least four of the following medical specialties:
      (i) General medicine.
      (ii) Radiography.
      (iii) Orthopedic medicine.
      (iv) Physical medicine.
      (v) Physical therapy.
      (vi) Physical rehabilitation.
      (vii) Prescribing or dispensing outpatient prescription medication.
      (viii) Laboratory services.

Medical benefits   do not include massage as defined in Florida Statutes § 480.033 or acupuncture as defined in Florida Statutes § 457.102, regardless of the person, entity, or licensee providing massage or acupuncture, and a licensed massage therapist or licensed acupuncturist will not be reimbursed for medical benefits  .

8. Medically necessary   refers to a medical service or supply that a prudent physician would provide for the purpose of preventing, diagnosing, or treating an illness, injury, disease, or symptom in a manner that is:
   (a) In accordance with generally accepted standards of medical practice;
   (b) Clinically appropriate in terms of type, frequency, extent, site, and duration; and
   (c) Not primarily for the convenience of the patient, physician, or other health care provider.
9. Motor vehicle   means any self-propelled vehicle of four or more wheels which is of a type both designed and required to be licensed for use on the highways of Florida and any trailer or semi-trailer designed for use with such vehicle.
   A motor vehicle   does not include:
   (a) Any motor vehicle   which is used in mass transit other than public school transportation and designed to transport more than five passengers exclusive of the operator of the   motor vehicle   and which is owned by a municipality, a transit authority, or a political subdivision of the state; or
   (b) A mobile home.
10. Occupying   means in or upon or entering into or alighting from.
11. Owner   means a person or organization who holds the legal title to a   motor vehicle  , and also includes:
   (a) A debtor having the right to possession, in the event a   motor vehicle   is the subject of a security agreement, and
   (b) A lessee having the right to possession, in the event a   motor vehicle   is the subject of a lease with option to purchase and such lease agreement is for a period of six months or more, and
   (c) A lessee having the right to possession, in the event a   motor vehicle   is the subject of a lease without option to purchase, and such lease agreement is for a period of six months or more, and the lease agreement provides that the lessee shall be responsible for securing insurance.
12. Pedestrian   means a person while not an occupant of any self-propelled vehicle.
13. Relative   means a person related to you by blood, marriage or adoption (including a ward or foster child) who is usually a resident of the same household as you .
14. You and your   means the named insured shown in the declarations or his or her spouse if a resident of the same household.

## PAYMENTS WE WILL MAKE

The Company will pay in accordance with the Florida Motor Vehicle No Fault Law (as enacted, amended, or newly enacted), and where applicable in accordance with all fee schedules contained in the Florida Motor Vehicle No Fault Law, to or for the benefit of the injured person:

(A) Eighty percent (80%) of medical benefits  which are medically necessary  , pursuant to the following schedule of maximum charges contained in the Florida Statutes § 627.736(5) (a)1., (a)2. and (a)3.:

  1. For emergency transport and treatment by providers licensed under Florida Statutes, chapter 401, 200 percent of Medicare.
  2. For emergency services and care provided by a hospital licensed under Florida Statutes, chapter 395, 75 percent of the hospital's usual and customary charges.
  3. For emergency services and care as defined by Florida Statutes, § 395.002 provided in a facility licensed under chapter 395 rendered by a physician or dentist, and related hospital inpatient services rendered by a physician or dentist, the usual and customary charges in the community.
  4. For hospital inpatient services, other than emergency services and care, 200 percent of the Medicare Part A prospective payment applicable to the specific hospital providing the inpatient services.
  5. For hospital outpatient services, other than emergency services and care, 200 percent of the Medicare Part A Ambulatory Payment Classification for the specific hospital providing the outpatient services.
  6. For all other medical services, supplies, and care, 200 percent of the allowable amount under:
      (I.)  The participating physicians fee schedule of Medicare Part B, except as provided in sections (II.) and (III.)
      (II.) Medicare Part B, in the case of services, supplies, and care provided by ambulatory surgical centers and clinical laboratories.
      (III.)The Durable Medical Equipment Prosthetics/Orthotics and Supplies fee schedule of Medicare Part B, in the case of durable medical equipment.

However, if such services, supplies, or care is not reimbursable under Medicare Part B (as provided in section (A) 6. above), we will limit reimbursement to eighty percent (80%) of the maximum reimbursable allowance under workers' compensation, as determined under Florida Statutes, § 440.13 and rules adopted thereunder which are in effect at the time such services, supplies, or care is provided. Services, supplies, or care that is not reimbursable under Medicare or workers' compensation is not required to be reimbursed by us.

The applicable fee schedule or payment limitation under Medicare is the fee schedule or payment limitation in effect on March 1 of the year in which the services, supplies, or care is rendered and for the area in which such services, supplies, or care is rendered, and the applicable fee schedule or payment limitation applies throughout the remainder of that year, notwithstanding any subsequent change made to the fee schedule or payment limitation, except that it may not be less than the allowable amount under the applicable schedule of Medicare Part B for 2007 for medical services, supplies, and care subject to Medicare Part B.

We may use the Medicare coding policies and payment methodologies of the federal Centers for Medicare and Medicaid Services, including applicable modifiers, to determine the appropriate amount of reimbursement for medical services, supplies, or care if the coding policy or payment methodology does not constitute a utilization limit. A charge submitted by a provider, for an amount less than the amount allowed above, shall be paid in the amount of the charge submitted.

Within 30 days after receiving notice that the Medicaid program has paid  medical benefits  , we shall repay the full amount of the medical benefits  to the Medicaid program subject to the LIMIT OF LIABILITY  .

(B) Disability benefits  , and
(C) Death benefits.

The above benefits will be provided for injuries incurred by an  insured  as a result of bodily injury  caused by an accident arising out of the ownership, maintenance or use of a  motor vehicle  .

## EXCLUSIONS

Section II - Part I does not apply:

1.  To you or any relative  injured while occupying  any motor vehicle  owned by you and which is not an insured-motor-vehicle    under this insurance;
2.  To any person while operating the insured-motor-vehicle    without your  express or implied consent;
3.  To any person, if such person's conduct contributed to his bodily injury   under any of the following circumstances:
    (i)  Causing bodily injury   to himself intentionally;

(ii) While committing a felony;

4. To you or any dependent relative for any loss of gross income and loss of earning capacity from inability to work proximately caused by the injury sustained by the injured person if an entry in the schedule or declarations indicates such coverage does not apply;

5. To any pedestrian , other than you or any relative , not a legal resident of the State of Florida;

6. To any person, other than you , if such person is the owner of a motor vehicle with respect to which security is required under the Florida Motor Vehicle No-Fault law, as amended;

7. To any person, other than you or any relative , who is entitled to personal injury protection benefits from the owner or owners of a motor vehicle which is not an insured-motor-vehicle under this insurance or from the owner's insurer; or

8. To any person who sustains bodily injury while occupying a motor vehicle located for use as a residence or premises.

## LIMIT OF LIABILITY

Regardless of the number of persons insured, policies or bonds applicable, vehicles involved or claims made, the total aggregate limit of personal injury protection benefits available under the Florida Motor Vehicle No-Fault Law (as enacted, amended or newly enacted), from all sources combined, including this policy, for all loss and expense incurred by or on behalf of any one person who sustains bodily injury as the result of any one accident shall be:

1. After the applicable deductible is met and subject to the PAYMENTS WE WILL MAKE , a combined total of $10,000 for medical benefits and disability benefits.
   Medical benefits are subject to the following limitations:

   (a) Reimbursement for services and care provided in paragraphs (a), (b) or (c) of the definition of medical benefits up to $10,000 if a physician licensed under Florida Statutes, chapter 458 or chapter 459, a dentist licensed under Florida Statutes, chapter 466, a physician assistant licensed under chapter Florida Statutes, chapter 458 or chapter 459, or an advanced registered nurse practitioner licensed under Florida Statutes, chapter 464 has determined that the injured person had an emergency medical condition .

   (b) Reimbursement for services and care provided in paragraphs (a), (b) or (c) of the definition of medical benefits is limited to $2,500 if any provider listed in paragraphs (a), (b) or (c) of the definition of medical benefits determines that the injured person did not have an emergency medical condition .

2. $5,000 for death benefits.

## APPLICATION OF DEDUCTIBLE

Pursuant to Florida Statutes § 627.739, the amount of any deductible stated in the declarations and applicable to each insured must be applied to 100% of all expenses or losses as described in Florida Statutes § 627.736 with respect to all medical benefits and disability benefits incurred by or on behalf of each person to whom the deductible applies and who sustains bodily injury as the result of any one accident. Such deductible will not apply to the death benefit.

## OTHER INSURANCE

Any amount available for payment under this insurance shall be reduced by the amount of benefits an injured person has recovered for the same elements of loss under the workers' compensation laws of any state or the federal government. If benefits have been received under the Florida Motor Vehicle No-Fault Law, as amended, from any insurer for the same items of loss and expense for which benefits are available under this policy, we shall not be liable to make duplicate payments to or for the benefit of the injured person, but the insurer paying such benefits shall be entitled to recover from us its equitable pro rata share of the benefits paid and expenses incurred in processing the claim.

## POLICY PERIOD - TERRITORY

The insurance under this Section applies only to accidents which occur during the policy period:

(a) In the State of Florida;

(b) As respects you or a relative , while occupying the insured-motor-vehicle outside the State of Florida but within the United States of America, its territories or possessions or Canada; and

(c) As respects pedestrians injured when struck by the insured-motor-vehicle in the State of Florida, if they are not the owner of a motor vehicle for which coverage is required to be maintained under the Florida No-Fault Law.

## CONDITIONS

### 1. NOTICE

In the event of an accident, written notice of the loss must be given to us or any of our authorized agents as soon as practicable. If any injured person or his legal representatives shall institute legal action to recover damages for bodily

injury  against a third party, a copy of the summons and complaint or other process served in connection with such legal action shall be forwarded as soon as practicable to us by such injured person or his legal representative.

2.  ACTION AGAINST THE COMPANY

As a condition precedent to filing any action for benefits under this coverage, written notice of intent to initiate litigation must be provided to us pursuant to Florida Statutes § 627.736 (10). Such notice may not be sent until the claim is overdue, including any additional time the we have to pay the claim pursuant to Florida Statutes § 627.736 (4)(b). The notice must state that it is a "demand letter under s. 627.736" and state with specificity:

1.  The name of the insured  upon which such benefits are being sought, including a copy of the assignment giving rights to the claimant if the claimant is not the  insured .

2.  The claim number or policy number upon which such claim was originally submitted to us.

3.  To the extent applicable, the name of any medical provider who rendered to an  insured  the treatment, services, accommodations, or supplies that form the basis of such claim; and an itemized statement specifying each exact amount, the date of treatment, service, or accommodation, and the type of benefit claimed to be due. A completed form satisfying the requirements of Florida Statutes § 627.736 (5) (d) or the lost-wage statement previously submitted may be used as the itemized statement. To the extent that the demand involves our withdrawal of payment under Florida Statutes § 627.736 (7)(a) for future treatment not yet rendered, the claimant shall attach a copy of our notice withdrawing such payment and an itemized statement of the type, frequency, and duration of future treatment claimed to be reasonable and  medically necessary  .

Each required notice must be delivered to us by United States certified or registered mail, return receipt requested. Such postal costs shall be reimbursed by us if requested by the claimant in the notice, when we pay the claim. Such notice must be sent to the person and address specified by us for the purposes of receiving notices under Florida Statutes § 627.736 (10) (c).

If, within 30 days after receipt of notice by us, the overdue claim specified in the notice is paid by us together with applicable interest and a penalty of 10 percent of the overdue amount paid by us, subject to a maximum penalty of $250, no action may be brought against us. If the demand involves our withdrawal of payment under Florida Statutes § 627.736 (7)(a) for future treatment not yet rendered, no action may be brought against us if, within 30 days after its receipt of the notice, we mail to the person filing the notice a written statement of the our agreement to pay for such treatment in accordance with the notice and to pay a penalty of 10 percent, subject to a maximum penalty of $250, when it pays for such future treatment in accordance with the requirements of Florida Statutes § 627.736 (10).

To the extent we determine not to pay any amount demanded, the penalty is not payable in any subsequent action. Payment or our agreement shall be treated as being made on the date a draft or other valid instrument that is equivalent to payment, or our written statement of agreement, is placed in the United States mail in a properly addressed, postpaid envelope, or if not so posted, on the date of delivery. We are not obligated to pay any attorney fees if we pay the claim or mail our agreement to pay for future treatment within the time prescribed by section Florida Statutes § 627.736 (10).

The applicable statute of limitation for an action under Florida Statutes § 627.736 shall be tolled for 30 business days by the mailing of the notice required by this Florida Statutes § 627.736 (10).

3.  PROOF OF CLAIM AND MEDICAL REPORTS

As soon as practicable the person making the claim shall give to us written proof of claim, under oath if required, which may include full particulars of the nature and extent of the injuries and treatment received and contemplated, and such other information as may assist us in determining the amount due and payable.

4.  INDEPENDENT MEDICAL EXAMINATIONS

Any person making a claim shall submit to mental or physical examinations in accordance with the Florida Motor Vehicle No-Fault Law (as enacted, amended, or newly enacted), at our expense when and as often as we may reasonably require and a copy of the medical report shall be forwarded to such person if requested. If a person unreasonably refuses to submit to or fails to appear at an examination, we are no longer liable for subsequent personal injury protection benefits. An insured's refusal to submit to or failure to appear at two examinations raises a rebuttable presumption that the insured's refusal or failure was unreasonable.

5.  PAYMENT OF CLAIM WITHHELD

Whenever a person making a claim is charged with committing a felony, if such person's conduct contributed to their bodily injury  , we shall withhold benefits until, at the trial level, the prosecution makes a formal entry on the record that it will not prosecute the case against the person, the charge is dismissed or the person is acquitted.

6.  EXAMINATION UNDER OATH (EUO)

If requested by us, an insured  or omnibus insured must submit to an examination under oath (EUO) by any person named by us when, where and as often as we may reasonably require. The scope of questioning during the examination under oath is limited to relevant information or information that could reasonably be expected to lead to relevant information. This provision includes providing a copy of any documents, forms, records or material requested to be provided as part of the EUO request whether the request is made before, during or after the EUO.

Compliance with submitting to an EUO is a condition precedent to receiving benefits. If an insured or omnibus insured refuses to submit to or fails to appear at an EUO, we will not be liable for personal injury protection benefits.

7. REIMBURSEMENT AND SUBROGATION

In the event of payment to or for the benefits of any injured person under this insurance:

(a) The Company may be subrogated to the rights of the person to whom or for whose benefit such payments were made to the extent of such payments. Such person shall execute and deliver the instruments and papers and do whatever else is necessary to secure such rights. Such person shall do nothing after loss to prejudice such rights.

(b) The Company providing personal injury protection benefits on a private passenger motor vehicle, as defined in the Florida Motor Vehicle No-Fault Law, shall be entitled to reimbursement to the extent of the payment of personal injury protection benefits from the owner or insurer of the owner of a commercial motor vehicle, as defined in the Florida Motor Vehicle No-Fault Law, if such injured person sustained the injury while occupying , or while a pedestrian through being struck by, such commercial motor vehicle. This does not apply to owners or registrants identified as taxi-cabs as defined in Florida Statutes §627.733(1)(b).

8. SPECIAL PROVISION FOR RENTED OR LEASED VEHICLES

Notwithstanding any provision of this coverage to the contrary, if a person is injured while occupying , or through being struck by, a motor vehicle rented or leased under a rental or lease agreement, within the state of Florida, which does not specify otherwise in at least 10 point type on the face of such agreement, the personal injury protection coverage afforded under the lessor' s policy shall be primary. Personal injury protection coverage offered under this policy will not apply to a vehicle rented, operated, used, or leased outside the state of Florida.

9. REASONABLE BELIEF OF FRAUD

If we have a reasonable belief that a fraudulent insurance act, for the purposes of Florida Statutes § 626.989 or Florida Statutes § 817.234, has been committed, we shall notify the injured person, in writing, within 30 days after submission of the claim that the claim is being investigated for suspected fraud. Beginning at the end of the initial 30-day period, we have an additional 60 days to conduct our fraud investigation. No later than 90 days after the submission of the claim, we must deny the claim or pay the claim with simple interest. Interest shall be assessed from the day the claim was submitted until the day the claim is paid. All claims denied for suspected fraudulent insurance acts shall be reported to the Division of Insurance Fraud.

10. NONREIMBURSIBLE CLAIMS

Claims generated as a result of activities that are unlawful pursuant to Florida Statutes § 817.505 are not reimbursable under the Florida Motor Vehicle No-Fault Law and this policy.

11. ADDITIONAL CONDITIONS

If we pay only a portion of a claim or reject a claim due to an alleged error in the claim, we, at the time of the partial payment or rejection, shall provide an itemized specification or explanation of benefits due to the specified error. Upon receiving the specification or explanation, the person making the claim, at the person's option and without waiving any other legal remedy for payment, has 15 days to submit a revised claim, which shall be considered a timely submission of written notice of a claim.

We shall create and maintain for each Insured a log of personal injury protection benefits paid by us on behalf of the insured . If litigation is commenced, we shall provide to the Insured a copy of the log within 30 days after receiving a request for the log from the insured.

In a dispute between us and the insured , or between an assignee of the insured's rights and us, upon request, we must notify the insured or the assignee that the policy limits under this section have been reached within 15 days after the limits have been reached.


PART II - ADDITIONAL PERSONAL INJURY PROTECTION

Additional Personal Injury Protection applies only if a premium amount is shown in the Policy Declarations for "Additional Personal Injury Protection" coverage. It is an optional coverage to compliment Personal Injury Protection Coverage and does not increase the limit of liability.

The terms and conditions under SECTION II: PART I - PERSONAL INJURY PROTECTION apply to this coverage for ADDITIONAL PERSONAL INJURY PROTECTION .

However, the following revisions are made to SECTION II: PART I - PERSONAL INJURY PROTECTION :

The definition of disability benefits in SECTION II: PART I - PERSONAL INJURY PROTECTION is replaced in its entirety as follows:

2. Disability benefits means eighty-five percent (85%) of any loss of gross income and loss of earning capacity per individual from inability to work proximately caused by the injury sustained by the injured person, plus all expenses reasonably incurred in obtaining from others ordinary and necessary services in lieu of those that, but for the injury, the injured person would have performed without income for the benefit of his or her household.

The PAYMENTS WE WILL MAKE  Section in SECTION II: PART I – PERSONAL INJURY PROTECTION   is replaced in its entirety with the following:

PAYMENTS WE WILL MAKE

The Company will pay in accordance with the Florida Motor Vehicle No Fault Law (as enacted, amended, or newly enacted), and where applicable in accordance with all fee schedules contained in the Florida Motor Vehicle No Fault Law, to or for the benefit of the injured person:

(A) One hundred percent (100%) of medical benefits  which are medically necessary , pursuant to the following schedule of maximum charges contained in the Florida Statutes § 627.736(5) (a)1., (a)2. and (a)3.:

   1.  For emergency transport and treatment by providers licensed under Florida Statutes, chapter 401, 200 percent of Medicare.

   2.  For emergency services and care provided by a hospital licensed under Florida Statutes, chapter 395, 75 percent of the hospital' s usual and customary charges.

   3.  For emergency services and care as defined by Florida Statutes, § 395.002 provided in a facility licensed under chapter 395 rendered by a physician or dentist, and related hospital inpatient services rendered by a physician or dentist, the usual and customary charges in the community.

   4.  For hospital inpatient services, other than emergency services and care, 200 percent of the Medicare Part A prospective payment applicable to the specific hospital providing the inpatient services.

   5.  For hospital outpatient services, other than emergency services and care, 200 percent of the Medicare Part A Ambulatory Payment Classification for the specific hospital providing the outpatient services.

   6.  For all other medical services, supplies, and care, 200 percent of the allowable amount under:

       (I.)  The participating physicians fee schedule of Medicare Part B, except as provided in sections (II.) and (III.)

       (II.)  Medicare Part B, in the case of services, supplies, and care provided by ambulatory surgical centers and clinical laboratories.

       (III.)The Durable Medical Equipment Prosthetics/Orthotics and Supplies fee schedule of Medicare Part B, in the case of durable medical equipment.

   However, if such services, supplies, or care is not reimbursable under Medicare Part B (as provided in section (A) 6. above), we will limit reimbursement to eighty percent (80%) of the maximum reimbursable allowance under workers' compensation, as determined under Florida Statutes, § 440.13 and rules adopted thereunder which are in effect at the time such services, supplies, or care is provided. Services, supplies, or care that is not reimbursable under Medicare or workers' compensation is not required to be reimbursed by us.

   The applicable fee schedule or payment limitation under Medicare is the fee schedule or payment limitation in effect on March 1 of the year in which the services, supplies, or care is rendered and for the area in which such services, supplies, or care is rendered, and the applicable fee schedule or payment limitation applies throughout the remainder of that year, notwithstanding any subsequent change made to the fee schedule or payment limitation, except that it may not be less than the allowable amount under the applicable schedule of Medicare Part B for 2007 for medical services, supplies, and care subject to Medicare Part B.

   We may use the Medicare coding policies and payment methodologies of the federal Centers for Medicare and Medicaid Services, including applicable modifiers, to determine the appropriate amount of reimbursement for medical services, supplies, or care.

   A charge submitted by a provider, for an amount less than the amount allowed above, shall be paid in the amount of the charge submitted.

   Within 30 days after receiving notice that the Medicaid program has paid  medical benefits , we shall repay the full amount of the medical benefits  to the Medicaid program subject to the  LIMIT OF LIABILITY .

(B) Disability benefits  , and

(C) Death benefits.

The above benefits will be provided for injuries incurred by an  insured  as a result of bodily injury  caused by an accident arising out of the ownership, maintenance or use of a  motor vehicle  .

The following paragraph is added to the LIMIT OF LIABILITY  in SECTION II: PART I – PERSONAL INJURY PROTECTION Section:

We will not pay any benefits for bodily injury  which the insured  or anyone else is required to pay because of any elected basic Personal Injury Protection deductible or other payment limitation, or the portion of any loss the  insured  must share under any provision of any basic Florida Personal Injury Protection Coverage.

PART III - MODIFICATION OF POLICY COVERAGES

Any Automobile Medical Payments insurance, any Uninsured Motorists coverage or any excess Underinsured Motorists coverage afforded by the policy shall be excess over any Personal Injury Protection benefits paid or available for payment or which would be available but for the application of a deductible.

Regardless of whether the full amount of Personal Injury Protection benefits have been exhausted, any Medical Payments insurance afforded by this policy shall pay the portion of any claim for Personal Injury Protection medical benefits contained in Part I which are otherwise covered but not available for payment due to the limitation of eighty percent (80%) of medical benefits contained in Part I but shall not be payable for the amount of the deductible selected.

PART IV - PROVISIONAL PREMIUM

It is agreed that in the event of any change in the rules, rates, rating plan, premiums or minimum premiums applicable to the insurance afforded, because of an adverse judicial finding as to the constitutionality of any provisions of the Florida Motor Vehicle No-Fault Law (as enacted, amended or newly enacted), providing for the exemption of persons from tort liability, the premium stated in the declarations for any Liability, Medical Payments and Uninsured Motorists Insurance shall be deemed provisional and subject to recomputation. If this policy is a renewal policy, such recomputation shall also include a determination of the amount of any return premium previously credited or refunded to the named insured pursuant to the Florida Motor Vehicle No-Fault Law, as amended, with respect to insurance afforded under a previous policy.

If the final premium thus recomputed exceeds the premium stated in the declarations, the insured shall pay to the Company the excess as well as the amount of any return premium previously credited or refunded.

PART V - AUTOMOBILE MEDICAL PAYMENTS COVERAGE

(Automobile Medical Payments coverage applies only if a premium amount is shown in the Policy Declarations for "Medical Payments" coverage)

The DEFINITIONS under SECTION II - PART I also apply to SECTION II - PART V .

PAYMENTS WE WILL MAKE

Under Automobile Medical Payments coverage, the Company will pay all reasonable medically necessary medical benefits incurred within one year of from the date of the accident for bodily injury caused by an accident arising out of the ownership, maintenance or use of a motor vehicle and sustained by you or any relative while occupying a motor vehicle or while a pedestrian through being struck by a motor vehicle .

We will pay, subject to the coverage limit shown in the policy declarations:

(a) The portion of any claim for Personal Injury Protection medical benefits otherwise covered but not payable due to the coinsurance provision of Personal Injury Protection. This is the twenty percent (20%) of medical benefits not covered in SECTION II: PART I - PAYMENTS WE WILL MAKE , and

(b) Medically necessary medical benefits that exceed the Personal Injury Protection medical benefits coverage paid.

Payments we will make pursuant to paragraph (b) will be paid pursuant to the following schedule of maximum charges:

1. For emergency transport and treatment by providers licensed under Florida Statutes, chapter 401, 200 percent of Medicare.

2. For emergency services and care provided by a hospital licensed under Florida Statutes, chapter 395, 75 percent of the hospital's usual and customary charges.

3. For emergency services and care as defined by Florida Statutes, § 395.002 provided in a facility licensed under chapter 395 rendered by a physician or dentist, and related hospital inpatient services rendered by a physician or dentist, the usual and customary charges in the community.

4. For hospital inpatient services, other than emergency services and care, 200 percent of the Medicare Part A prospective payment applicable to the specific hospital providing the inpatient services.

5. For hospital outpatient services, other than emergency services and care, 200 percent of the Medicare Part A Ambulatory Payment Classification for the specific hospital providing the outpatient services.

6. For all other medical services, supplies, and care, 200 percent of the allowable amount under:

(I.) The participating physicians fee schedule of Medicare Part B, except as provided in sections (II.) and (III.)

(II.) Medicare Part B, in the case of services, supplies, and care provided by ambulatory surgical centers and clinical laboratories.

(III.)The Durable Medical Equipment Prosthetics/Orthotics and Supplies fee schedule of Medicare Part B, in the case of durable medical equipment.

However, if such services, supplies, or care is not reimbursable under Medicare Part B (as provided in section (A) 6. above), we will limit reimbursement to eighty percent (80%) of the maximum reimbursable allowance under workers' compensation, as determined under Florida Statutes, § 440.13 and rules adopted thereunder which are in effect at the time such services, supplies, or care is provided. Services, supplies, or care that is not reimbursable under Medicare or workers' compensation is not required to be reimbursed by us.

The applicable fee schedule or payment limitation under Medicare is the fee schedule or payment limitation in effect on March 1 of the year in which the services, supplies, or care is rendered and for the area in which such services, supplies, or care is rendered, and the applicable fee schedule or payment limitation applies throughout the remainder of that year, notwithstanding any subsequent change made to the fee schedule or payment limitation, except that it may not be less than the allowable amount under the applicable schedule of Medicare Part B for 2007 for medical services, supplies, and care subject to Medicare Part B.

We may use the Medicare coding policies and payment methodologies of the federal Centers for Medicare and Medicaid Services, including applicable modifiers, to determine the appropriate amount of reimbursement for medical services, supplies, or care.

A charge submitted by a provider, for an amount less than the amount allowed above, shall be paid in the amount of the charge submitted.

EXCLUSIONS

Automobile Medical Payments coverage does not apply:

1. To you or any relative injured while occupying any motor vehicle owned by you or a relative and which is not an insured-motor-vehicle under this insurance;
2. To any person while operating the insured-motor-vehicle without your express or implied consent;
3. To any person, if such person's conduct contributed to his bodily injury under any of the following circumstances:
   (i) Causing bodily injury to himself intentionally;
   (ii) While committing a felony;
4. To any pedestrian, other than you or any relative ;
5. To any person, other than you, if such person is the owner of a motor vehicle with respect to which security is required under the Florida Motor Vehicle No-Fault Law, as amended;
6. To any person who sustains bodily injury while occupying a motor vehicle located for use as a residence or premises;
7. To bodily injury sustained by you or a relative that results from war of any kind;
8. To bodily injury sustained by you or a relative that results from exposure to fungi;
9. To bodily injury sustained by you or a relative that results from:
   (i) Nuclear reaction;
   (ii) Radiation or radioactive contamination from any source;
   (iii) The intentional or accidental detonation of, or release of radiation from any nuclear or radioactive device;
10. To bodily injury sustained by you or a relative while occupying a motor vehicle , or while a pedestrian through being struck by a motor vehicle while being employed or engaged in the business of selling, leasing, repairing, parking, storing, servicing, delivering or testing vehicles.
11. To bodily injury sustained by you or a relative caused by an auto driven in or preparing for any racing, speed or demolition contest or stunting activity of any nature, whether or not prearranged or organized.

LIMITS OF LIABILITY

Regardless of the number of persons insured, policies or bonds applicable, vehicles involved or claims made, the total aggregate limit of Automobile Medical Payments benefits available from all sources combined, including this policy, for all loss and expense incurred by or on behalf of any one person who sustains bodily injury as the result of any one accident is the amount listed in the declarations page.

OTHER INSURANCE

Any amount available for payment under this insurance shall be reduced by the amount of benefits an injured person has recovered for the same elements of loss under the workers' compensation or other similar laws of any state or the federal government.

If benefits have been received under any similar coverage from any insurer for the same items of loss and expense for which benefits are available under this policy, we shall not be liable to make duplicate payments to or for the benefit of the injured person, but the insurer paying such benefits shall be entitled to recover from us its equitable pro rata share of the benefits paid and expenses incurred in processing the claim. This coverage will coordinate with any applicable Personal Injury Protection benefits but will not duplicate any benefits available for payment. The coverage of the occupied vehicle is primary.

Any Uninsured Motorist Coverage or any excess Underinsured Motorist Coverage afforded by this policy shall be excess over any Automobile Medical Payments benefits paid or available for payment or which would be available but for the application of a deductible; and subject to the terms and conditions of the Uninsured/Underinsured Motorist coverage. This coverage is excess over any other valid and collectible insurance provided with respect to the occupied motor vehicle .

POLICY PERIOD - TERRITORY

The insurance under this Part applies only to accidents which occur during the policy period:

(a) In the State of Florida; and

(b) We will cover you or any relative for injuries incurred while occupying a motor vehicle or as a pedestrian in an accident that occurs outside the state of Florida, but within the United States of America, its territories or possessions, or Canada.

CONDITIONS

1. NOTICE

   In the event of an accident, written notice of the loss must be given to us or any of our authorized agents as soon as practicable. If any injured person or his legal representatives shall institute legal action to recover damages for bodily injury against a third party, a copy of the summons and complaint or other process served in connection with such legal action shall be forwarded as soon as practicable to us by such injured person or his legal representative.

2. PROOF OF CLAIM

   As soon as practicable the person making the claim shall give to us written proof of claim, under oath if required, which may include full particulars of the nature and extent of the bodily injury and treatment received and contemplated, and such other information as may assist us in determining the amount due and payable.

3. INDEPENDENT MEDICAL EXAMINATIONS

   Any person making a claim shall submit to mental or physical examinations at our expense when and as often as we may reasonably require and a copy of the medical report shall be forwarded to such person if requested. If a person unreasonably refuses to submit to or fails to appear at an examination, we are no longer liable for subsequent Automobile Medical Payment benefits. An insured's refusal to submit to, complete or failure to appear at two examinations will be considered unreasonable.

4. PAYMENT OF CLAIM WITHHELD

   Whenever a person making a claim is charged with committing a felony, if such person's conduct contributed to their bodily injury , we shall withhold benefits until, at the trial level, the prosecution makes a formal entry on the record that it will not prosecute the case against the person, the charge is dismissed or the person is acquitted. We also have the right to determine if incurred charges and treatment are reasonable, medically necessary and causally related to a bodily injury sustained in an accident. This determination may be made by use of utilization review, peer reviews, medical bill reviews or medical examination.

5. EXAMINATION UNDER OATH (EUO)

   If requested by us, you or a relative must submit to an examination under oath (EUO) by any person named by us when, where and as often as we may reasonably require. The scope of questioning during the examination under oath is limited to relevant information or information that could reasonably be expected to lead to relevant information. This provision includes providing a copy of any documents, forms, records or material requested to be provided as part of the EUO request whether the request is made before, during or after the EUO.
   Compliance with submitting to an EUO is condition precedent to receiving benefits. If you or a relative refuses to submit to or fails to appear at an EUO, we will not be liable for Automobile Medical Payments coverage.

6. ACTION AGAINST THE COMPANY

   No action shall lie against us:

   (a) Unless the insured has fully complied with all the policy' s terms and conditions; and

   (b) Until 30 days after the required notice of accident and reasonable proof of claim has been filed with us; and

   (c) Unless we receive written notice of the intent to initiate litigation and within 30 days after receipt of such notice we do not:

      (i) Pay the claim; or

      (ii) Mail to the person filing the notice a written statement of our agreement to pay for such treatment in accordance with the notice.

Payment or our written statement of agreement to pay for treatment shall be treated as being made on the date a draft, or other valid instrument that is equivalent payment, or the written statement of agreement to pay, is placed in the United States mail properly addressed posted envelope or if not so posted, on the date of delivery.

The written notice of intent to initiate litigation must state that it is a demand letter for Automobile Medical Payments coverage and contain the following information:

(a) The name of the insured  for whom benefits are being sought including a copy of the assignment giving rights to the claimant if the claimant is not the  insured ;

(b) The claim number and or policy number upon which the claim was originally submitted; and

(c) To the extent applicable, the name of the medical provider who rendered the treatment, services, accommodations or supplies that form the basis of the claim, and each exact amount, the date of treatment, service or accommodation and the type of benefits claimed to be due. A health insurance claim form (CMS-1500) or UB 92 form or any other standard form approved by the Department of Financial Services, may be used as the itemized statement.

The written notice must be delivered to us by United States Certified or Registered mail, Return Receipt Requested, at the address we have filed with and that is made available by the office of the Florida Chief Financial Officer on its Internet website.

We will not be liable for interest, attorneys'  fees, costs, or any additional penalty.

7. SUBROGATION

In the event of payment to or for the benefits of any injured person under this insurance the Company is subrogated to the rights of the person to whom or for whose benefit such payments were made to the extent of such payments. Such person shall execute and deliver the instruments and papers and do whatever else is necessary to secure such rights. Such person shall do nothing after loss to prejudice such rights.

When an injured person has been paid by us and also recovers from another, the amount recovered will be held by the injured person in trust for us and reimbursed to us to the extent of our payment. If we are not reimbursed, we may pursue recovery of that amount directly against the injured person.

SECTION V - GENERAL CONDITIONS

The following conditions are revised:

15. FRAUD AND MISREPRESENTATION

Coverage is not provided to any person who conceals or misrepresents any material fact or circumstance relating to this insurance:

1. At the time application is made; or

2. At any time during the policy period; or

3. In connection with the presentation or settlement of a claim.

16. EXAMINATION UNDER OATH (EUO)

Unless otherwise modified elsewhere in the policy, if requested by us, an insured  or omnibus insured must submit to an examination under oath (EUO) by any person named by us when, where and as often as we may reasonably require.  This provision includes providing a copy of any documents, forms, records or material requested to be provided as part of the EUO request whether the request is made before, during or after the EUO. Compliance with submitting to an EUO is a condition precedent to receiving benefits or coverage under this policy. If an insured  or omnibus insured refuses to submit to or fails to appear at an EUO, we will not be liable for benefits or coverage under this policy.

We affirm this amendment.

W.C. E. Robinson
Secretary

O.M. Nicely
President

# GEICO

**UNINSURED MOTORISTS COVERAGE**
NON-STACKED
FLORIDA

Policy Number:

Section IV of your policy is replaced by the following:

DEFINITIONS

The definitions of terms for Section I apply to Section IV, except for the following special definitions:

1. **Hit-and-run vehicle**   means a motor vehicle causing bodily injury   to an insured  with or without physical contact with him or with a vehicle he is occupying   at the time of the accident and whose operator or owner cannot be identified; provided the insured   or someone on his behalf:

    (a) Reports the accident as soon as practicable to a police, peace or judicial officer or to the Commissioner of Motor Vehicles;

    (b) Files with us as soon as practicable a statement setting forth the facts of the accident and claiming that he has a cause of action for damages against an unidentified person.

2. **Insured**  means:

    (a) You;

    (b) Your relatives ;

    (c) Any other person while occupying   an insured auto  ;

    (d) Any person who is entitled to recover damages because of bodily injury   sustained by an insured  under (a), (b), and (c) above.

    If there is more than one insured,  our limits of liability will not be increased.

3. **Insured auto**  is an auto:

    (a) Described in the declarations and covered by the Bodily Injury Liability coverage of this policy;

    (b) Temporarily substituted for an insured auto  when withdrawn from normal use because of its breakdown,repair, servicing, loss or destruction;

    (c) Operated by you  or your  spouse if a resident of the same household.

    But the term insured auto  does not include:

    (i)  An insured auto  when used to carry passengers or goods for hire, except in a car-pool;

    (ii) An auto being used without the owner's permission; or

    (iii) Under subparagraphs (b) and (c) above, an auto owned by or available for the regular use of an  insured..

4. **Occupying**  means in, upon, entering into or alighting from.

5. **State** includes the District of Columbia, the territories and possessions of the United States, and the Provinces of Canada.

6. **Uninsured auto**  is an auto:

    (a) Which has no liability bond or insurance policy applicable with liability limits complying with the Financial Responsibility Law of the state in which the insured auto   is principally garaged at the time of the accident; or

    (b) For which the total of all bodily injury liability insurance available in the event of an accident is less than the damages sustained in an accident by an insured;  or

    (c) A hit-and-run vehicle  .

    (d) This term also includes an auto whose insurer is or becomes insolvent or denies coverage.

    The term uninsured auto  does not include:

    (a) An insured auto;

    (b) A land motor vehicle or trailer operated on rails or crawler treads or located for use as a residence or  premises; and

    (c) A farm-type tractor or equipment designed for use principally off public roads, except while used upon public roads.

## LOSSES WE PAY

Under the Uninsured Motorists coverage we will pay damages for bodily injury  , sustained by an insured , caused by accident which the insured  is legally entitled to recover from the owner or operator of an  uninsured auto  arising out of the ownership, maintenance or use of that auto.

## EXCLUSIONS

Section IV Does Not Apply:

1. To bodily injury   to an insured  if the insured  or his legal representative has made a settlement or has been awarded a judgment of his claim without our prior written consent and such settlement prejudices our right to recover.
2. To bodily injury   to an insured  while occupying  or when struck by any motor vehicle or motorcycle owned by an insured  or a relative , which is not insured under the Liability Coverages section of this policy.
3. To bodily injury   to a person not an insured .
4. To benefit any workmen's compensation insurer, self insurer, or disability benefits insurer.
5. To the United States of America or any of its agencies as an insured, a third party beneficiary or otherwise.
6. To any damages for pain and suffering that the insured  may be legally entitled to recover against an uninsured motorist unless the injury or disease caused by the uninsured motorist accident resulted in:
   (a) Significant and permanent loss of an important bodily function; or
   (b) Permanent injury within a reasonable degree of medical probability, other than scarring or disfigurement; or
   (c) Significant and permanent scarring or disfigurement; or
   (d) Death.
7. To punitive or exemplary damages, regardless of any other provision of this policy.
8. To any liability assumed under any contract or agreement.
9. To damage caused by the insured  in participation in and/or preparation for any racing, speed or demolition contest or stunting activity of any nature, whether prearranged or organized.

## LIMITS OF LIABILITY

The limit of liability for Uninsured Motorists coverage stated in the declarations as applicable to "each person" is the limit of our liability for all damages, including those for care or loss of services, due to  bodily injury  sustained by one person as the result of one accident.  The limit of liability stated in the declarations as applicable to "each accident" is, subject to the above provision respecting each person, the total limit of our liability for all such damages, including damages for care and loss of services, because of bodily injury  sustained by two or more persons as the result of one accident.

These limits are the maximum we will pay for any one accident regardless of the number of claims made, Uninsured Motorists coverage premiums paid, vehicles or persons stated in the declarations, or vehicles involved in the accident.

Subject to the above:

1. When coverage is afforded to two or more autos, the limits of liability shall apply separately to each auto as stated in the declarations.
2. If at the time of the accident the injured person is  occupying  an auto insured by us, the amount of coverage available to the injured person is the limit specified in the declarations for the occupied vehicle.
3. If at the time of the accident the injured person is  occupying  a motor vehicle which is not owned by him or by a family member residing with him, he is entitled to the highest limits of Uninsured Motorists coverage afforded for any one vehicle as to which he is the named insured or insured  family member.  Such coverage shall be excess over the coverage on the vehicle he is  occupying  .
4. If at the time of the accident the injured person is not  occupying  a motor vehicle, he is entitled to select any one limit of Uninsured Motorists coverage for any one vehicle afforded by a policy under which he is insured as a named insured or as a relative .

   If separate non-stacked policies with us are in effect for  you  or any person in your  household, they may not be combined to increase the limit of liability for a loss.

   If separate stacked policies with us are in effect, the stacked policies may be combined to increase the limit of liability for you  or your relatives  .
5. The limit of liability for Uninsured Motorists coverage shall be over and above, but shall not duplicate the benefits available to an insured  under any:
   (a) Workers' compensation law;
   (b) Personal injury protection benefits;

(c) Disability benefits law or similar law; or

(d) Automobile medical expense coverage.

6. The limit of liability for Uninsured Motorists coverage shall be over and above, but shall not duplicate any amount paid or payable:

(a) Under any motor vehicle liability insurance coverages; or

(b) By or on behalf of the owner or operator of the uninsured motor vehicle or any other person or organization jointly or severally liable together with such owner or operator for the accident.

## OTHER INSURANCE

Coverage provided by this section is intended to be excess over and above any other valid and collectable liability coverage.

When an insured occupies   an auto not described in this policy, and not owned by that insured  or a relative , this insurance is excess over any other similar insurance available to the  insured  and the insurance which applies to the occupied  auto is primary.

If the insured  has other insurance against a loss covered by the Uninsured Motorists provisions of this policy, we will not be liable for more than our pro-rata share of the total coverage available.

## DISPUTES BETWEEN US AND AN INSURED

1. Disputes between an insured  and us as to damages may be submitted to arbitration.  Arbitration must be agreed to in writing between the insured  and us.

   If arbitration is agreed upon, each party shall select an impartial arbitrator.  These arbitrators shall select a third one.

   The cost of the arbitration and any expenses for experts shall be paid by the party who hired them.  The cost of the third arbitrator shall be paid equally by the parties.

2. If the insured  and we cannot agree to arbitrate or agree to a third arbitrator, the insured  shall:

   (a) Sue the owner or driver of the uninsured auto   and us in a court of competent jurisdiction.  If the owner or driver is unknown, name us as the defendant.

   (b) When suit is filed, immediately give us copies of the suit papers.

3. If the insured  agrees to settle with another insurer, the insured  must submit to us in writing by certified or registered mail a copy of the proposed settlement

4. If within 30 days after receipt of the proposed settlement agreement, we do not:

   (a) Approve the proposed settlement and the signing of the full release

   (b) Waive our subrogation rights; and

   (c) Agree to arbitrate the claim,

   the insured  shall then file suit against us and the person(s) legally liable.

   The insured  may not dismiss a defendant from such lawsuit without our prior written consent.

5. Any award against us shall be binding and conclusive against the insured  up to our coverage limit.

## TRUST AGREEMENT

Whenever we make a payment under this coverage:

1. We will be entitled to repayment of that amount out of any settlement or judgment the  insured  recovers from any person or organization legally responsible for the bodily injury  .

2. The insured  will hold in trust for our benefit all rights of recovery which he may have against any person or organization responsible for these damages.  He will do whatever is necessary to secure all rights of recovery and will do nothing after the loss to prejudice these rights.

3. At our written request, the insured , in his own name, will take through a designated representative appropriate actions necessary to recover payment for damages from the legally responsible person or organization.  The  insured will pay us out of the recovery for our expenses, costs and attorney's fees.

4. The insured  will execute and furnish us with any needed documents to secure his and our rights and obligations.

## CONDITIONS

The following conditions apply only to the Uninsured Motorists coverage.  We will have no duty to provide coverage under this policy, and suit will not lie against us unless the insured  or his legal representative have fully complied with all the policy terms and conditions below:

1. NOTICE

   As soon as possible after an accident, notice must be given us or our authorized agent stating:

   (a) The identity of the insured ;

# GEICO

**Automobile Policy Endorsement**

Rental Reimbursement Endorsement

Policy Number:

We agree with you that the policy is amended as follows:

SECTION III - PHYSICAL DAMAGE COVERAGES

The following coverage is added:

Coverage-Rental Reimbursement

When there is a loss to an owned auto  for which a specific premium charge indicates that rental reimbursement coverage is afforded:

We will reimburse the insured  toward costs the insured  incurs to rent an auto.  Reimbursement will not exceed the limits described in the declarations and payment will be limited to a reasonable and necessary period of time required to repair or replace the owned auto . This coverage applies only if:

1. The owned auto  is withdrawn from use for more than 24 consecutive hours, and
2. The loss to the owned auto  is covered under comprehensive or collision coverage of this policy.

When there is a total theft of the entire auto, we will reimburse the insured  toward costs the insured  incurs to rent an auto, subject to the following limitations:

1. This coverage will reimburse the insured  for reasonable rental expenses beginning 48 hours after a theft of the entire vehicle covered under the comprehensive coverage of this policy; and
2. This coverage may be used to reimburse reasonable rental expenses in excess of those provided by Section III of the policy if and to the extent the coverage limits under rental reimbursement exceed those provided in Section III of the policy.  In that event, the amount payable under this endorsement is the amount by which this coverage exceeds those described in Section III of the policy; and
3. Subject to number 2 above, in no event shall the total amount payable under both this coverage and the supplemental coverage in Section III of the policy exceed the daily limit of coverage provided by this endorsement.

Reimbursement for rental charges shall end the earliest of when the owned auto  has been:

1. Returned to you ; or
2. Repaired; or
3. Replaced; or
4. Deemed a total loss by us:
   (a) Seventy-two (72) hours after we pay the applicable limit of liability under Section III; or
   (b) Seventy-two (72) hours after our initial settlement offer;
   whichever comes first.

However, when there is a total theft of an owned auto , reimbursement for rental charges shall end the earliest of:

1. The date the auto is returned to use if the vehicle is recovered before payment of the total theft claim to  you  or the owner of the vehicle; or if the vehicle is not recovered,
2. Seventy-two (72) hours after our initial settlement offer of the  actual cash value  of the owned auto .
3. Seventy-two (72) hours after the failure to provide either a proof of loss or recorded statement if requested by us.

No deductible applies to this coverage.

CONDITIONS

In the case of theft of the entire auto, the insured  must promptly notify the police that the vehicle was stolen. To be eligible as a covered loss , the police report must acknowledge and classify the report as theft of a motor vehicle. The insured  must cooperate fully: with the policy investigation, with the prosecution of any person(s) charged with theft and any civil suit brought by us against the person(s) responsible to recover for the  loss .

The coverage provided by this endorsement is subject to all the provisions and conditions of SECTION III of the policy.

The COMPANY affirms this endorsement.

W. C. E. Robinson
Secretary

O. M. Nicely
President

A-431 (05-11)

(b) The time, place and details of the accident; and

(c) The names and addresses of the injured, and of any witnesses.

If the insured or his legal representative files suit before we make a settlement under this coverage, he must immediately provide us with a copy of the pleadings.

2. ASSISTANCE AND COOPERATION OF THE INSURED

After we receive notice of a claim, we may require the insured to take any action necessary to preserve his recovery rights against any allegedly legally responsible person or organization. We may require the insured to make that person or organization a defendant in any action against us. The insured must cooperate with other reasonable requests for information or assistance made by us. The insured may not agree to dismiss any allegedly legally responsible person(s) or organization(s) from any action without our prior written agreement.

3. PROOF OF CLAIM

If requested by us, an insured must:

(a) EXAMINATION UNDER OATH (EUO)

Submit to examination under oath by any person named by us when, where and as often as we may reasonably require. This provision includes providing a copy of any documents, forms, records or material requested to be provided as part of the EUO request whether the request for this information is made before, during or after the EUO.

(b) INDEPENDENT MEDICAL OR MENTAL EXAMINATION

Submit to examination by doctors, or other health care providers chosen by us, at our expense, where and as often as we may reasonably require. The scope of the examination(s) may be as broad as we may reasonably require, including but not limited to physical and mental examinations.

(c) DOCUMENT REQUEST

Timely comply with all requests for information made by us including but not limited to requests for medical, employment, educational, financial and other pertinent records. If requested by us, the insured must provide written authorization, in a form acceptable to us, to obtain information and documents requested under this paragraph. In the event of the insured's incapacity or death, his representative must comply with this paragraph.

4. ACTION AGAINST US

Suit will not lie against us unless the insured or his legal representative have fully complied with all the policy terms.

5. PAYMENT OF LOSS

Any amount due is payable:

(a) To the insured or his authorized representative;

(b) If the insured is a minor, to his parent or guardian; or

(c) If the insured is deceased, to his surviving spouse; otherwise

(d) To a person authorized by law to receive the payment; or to a person legally entitled to recover payment for the damages.

We may, at our option, pay an amount due in accordance with (d) above.

We affirm this amendment.

W. C. E. Robinson
Secretary

O. M. Nicely
President

## ENDORSEMENT

## LOSS PAYABLE CLAUSE

The Policy Number and Effective Date need be completed only when this endorsement is issued subsequent to preparation of the policy.

Policy Number:

Effective Date:

Any covered loss under the Physical Damage Coverages of the policy will be paid jointly to the insured and the Lienholder in the Declarations. We may settle a claim at our option by separate payment to the insured and the Lienholder. The Lienholder's interest will not be protected:

1. When fraud, misrepresentation, material omission, or intentional damage has knowingly been committed by or at the direction of any insured ; or

2. In any case of conversion, embezzlement, secretion, or intentional damage to the vehicle(s) by or at the direction of any insured , or any owner of the vehicle(s); or

3. For any loss or damage caused by, or reasonably expected to result from, a criminal act or omission of any insured  or any owner of the vehicle(s).

The Lienholder has no greater rights under the provisions of the policy than any insured,.

The Lienholder must notify us if they become aware of any increased hazard or change of ownership of the vehicle(s) or they will lose all rights under this policy.

If any insured  fails to file with us a Proof of Loss within 91 days after the loss , the Lienholder must do so within the following 60 days.

Whenever we pay the Lienholder, we shall be subrogated to the Lienholder's rights of recovery to the extent of our payment to the Lienholder. If the policy is in effect as to the Lienholder but has been canceled as to any insured , the Lienholder must assign the loan to us to the extent of our payment, if we ask.

We will provide notice to the Lienholder at least 10 days before we cancel their interest in the policy .

This endorsement forms a part of your policy. It is effective at 12:01 A.M. local time at your address on the effective date shown above.

UE-316F (07-11)

## IMPORTANT NOTICE

FEE SCHEDULE ENDORSEMENT
USE OF MEDICAL FEE SCHEDULE FOR PERSONAL INJURY PROTECTION CLAIMS
THIS NOTICE IS ENCLOSED IN COMPLIANCE WITH FLORIDA STATUTE 627.736

Effective January 1, 2013

The Company will limit reimbursement of medical expenses to 80 percent of a properly billed reasonable charge, but in no event will the Company pay more than 80 percent of the following schedule of maximum charges:

1. For emergency transport and treatment by providers licensed under Chapter 401, Florida Statutes, 200 percent of Medicare.

2. For emergency services and care provided by a hospital licensed under Chapter 395, Florida Statutes, 75 percent of the hospital's usual and customary charges.

3. For emergency services and care as defined by Florida Statutes § 395.002 provided in a facility licensed under Chapter 395, Florida Statutes rendered by a physician or dentist, and related hospital inpatient services rendered by a physician or dentist, the usual and customary charges in the community.

4. For hospital inpatient services, other than emergency services and care, 200 percent of the Medicare Part A prospective payment applicable to the specific hospital providing the inpatient services.

5. For hospital outpatient services, other than emergency services and care, 200 percent of the Medicare Part A Ambulatory Payment Classification for the specific hospital providing the outpatient services.

6. For all other medical services, supplies, and care, 200 percent of the allowable amount under:

   (I.) The participating physicians fee schedule of Medicare Part B, except as provided in sections (II.) and (III.).

   (II.) Medicare Part B, in the case of services, supplies, and care provided by ambulatory surgical centers and clinical laboratories.

   (III.) The Durable Medical Equipment Prosthetics/Orthotics and Supplies fee schedule of Medicare Part B, in the case of durable medical equipment.

   However, if such services, supplies, or care is not reimbursable under Medicare Part B (as provided in section 6. above), we will limit reimbursement to eighty percent (80%) of the maximum reimbursable allowance under workers' compensation, as determined under Florida Statutes, § 440.13 and rules adopted thereunder which are in effect at the time such services, supplies, or care is provided. Services, supplies, or care that is not reimbursable under Medicare or workers' compensation is not required to be reimbursed by us.

The applicable fee schedule or payment limitation under Medicare is the fee schedule or payment limitation in effect on March 1 of the year in which the services, supplies, or care is rendered and for the area in which such services, supplies, or care is rendered, and the applicable fee schedule or payment limitation applies throughout the remainder of that year, notwithstanding any subsequent change made to the fee schedule or payment limitation, except that it may not be less than the allowable amount under the applicable schedule of Medicare Part B for 2007 for medical services, supplies, and care subject to Medicare Part B.

Personal Injury Protection Coverage is subject to the terms, conditions and exclusions in your policy. Please read your policy carefully.

## Civil Remedy Notice of Insurer Violations

Filing Number:       **323930**

Filing Accepted:     **10/12/2016**

Warning! Information submitted as part of this civil remedy notice is a public record.  Data entered into this form will be displayed on the DFS website for public review.  Please DO NOT enter Social Security Numbers, personal medical information, personal financial information or any other information you do not want available for public review.

☑ The submitter hereby states that this notice is given in order to perfect the rights of the person(s) damaged to pursue civil remedies authorized by Section 624.155, Florida Statutes.

### Complainant

| | |
|---|---|
| Name: | **CHERYL FENWICK** |
| Street Address: | **3185 WHISPERING TRAILS AVENUE** |
| City, State Zip: | **WINTER HAVEN, FL  33884** |
| Email Address: | |
| Complainant Type: | **Insured** |

### Insured

| | |
|---|---|
| Name: | **CHERYL FENWICK** |
| Policy #: | **0989649009** |
| Claim #: | **0023774470101331** |

### Attorney

| | |
|---|---|
| Name: | **MELODIE J LOPEZ** |
| Street Address: | **2420 SOUTH FLORIDA AVENUE** |
| City, State Zip: | **LAKELAND, FL  33803** |
| Email Address: | |

### Notice Against

| | |
|---|---|
| Insurer Type: | **Authorized Insurer** |
| Name: | **GOVERNMENT EMPLOYEES INSURANCE COMPANY** |
| Street Address: | |
| City, State Zip: | |

Please identify the person or persons representing the insurer who are most responsible for/knowledgeable of the facts giving rise to the allegations in this notice.

**MELODIE J. LOPEZ**

| | |
|---|---|
| Type of Insurance: | **Auto** |

DFS-10-363
Rev. 11/2007

EXHIBIT 'B'

## Civil Remedy Notice of Insurer Violations

Filing Number:       323930

### Reason for Notice:

Reasons for Notice:

**Unsatisfactory Settlement Offer**

PURSUANT TO SECTION 624.155, F.S. please indicate all statutory provisions alleged to have been violated.

**624.155(1)(b)(1)**      **Not attempting in good faith to settle claims when, under all the circumstances, it could and should have done so, had it acted fairly and honestly toward its insured and with due regard for her or his interests.**

Reference to specific policy language that is relevant to the violation, if any. If the person bringing the civil action is a third party claimant, she or he shall not be required to reference the specific policy language if the authorized insurer has not provided a copy of the policy to the third party claimant pursuant to written request.

**Not attempting in god faith to settle claims when under all the circumstances, it could and should have done so, had it acted fairly and honestly toward its insured and with due regard for her interests.**

To enable the insurer to investigate and resolve your claim, describe the facts and circumstances giving rise to the insurer's violation as you understand them at this time.

**This motor vehicle collision on October 28, 2015 occurred due to Thamon Moore's negligent failure to safely stop. Mr. Moore had BI limits of 10/20. Those limits were tendered. Due to injuries sustained by Ms. Fenwick, and her upcoming cervical fusion, Mr. Moore was underinsured. GEICO was given an opportunity but failed to tender its limits of $100,000.**

### Comments,

| User Id | Date Added | Comment |
|---|---|---|
|  |  |  |

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

GEICO
Florida Claims
P.O. Box 9091
Macon, GA
31208

2. Article Number
(Transfer from service label)

7014 1200 0001 0835 4637

PS Form 3811, July 2013          Domestic Return Receipt

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature

X   Brandon Gay          ☐ Agent
                         ☐ Addressee

B. Received by (Printed Name)      C. Date of Delivery

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:        ☐ No

3. Service Type
   ☐ Certified Mail®      ☐ Priority Mail Express™
   ☐ Registered           ☐ Return Receipt for Merchandise
   ☐ Insured Mail         ☐ Collect on Delivery

4. Restricted Delivery? (Extra Fee)            ☐ Yes

---

**U.S. Postal Service™**
**CERTIFIED MAIL™ RECEIPT**
(Domestic Mail Only; No Insurance Coverage Provided)

For delivery information visit our website at www.usps.com.

OFFICIAL USE

| | |
|---|---|
| Postage | $ |
| Certified Fee | |
| Return Receipt Fee (Endorsement Required) | |
| Restricted Delivery Fee (Endorsement Required) | |
| Total Postage & Fees | $ |

Postmark
Here

Sent To   GEICO

Street, Apt. No.;
or PO Box No.

City, State, ZIP+4

7014 1200 0001 0835 4637

PS Form 3800, August 2006          See Reverse for Instructions



**LOPEZ & HUMPHRIES** P.A.
A t t o r n e y s   a t   L a w

2420 SOUTH FLORIDA AVE
LAKELAND, FL 33803
863-709-1800 (OFFICE)
863-709-1850 (FAX)

February 6, 2017

GEICO GENERAL INSURANCE COMPANY                    Via Certified mail
c/o Florida Chief Financial Officer
Service of Process Section
PO Box 6200
Tallahassee, FL   32314-6200

  Re: Fenwick v Geico
    Polk County Case No:   2017-CA-0271

Dear Sir or Madam:

Enclosed please find the following documents:

- Original and one copy of the Summons directed to GEICO
- One copy of the Second Amended Complaint
- A $15.00 check payable to the Chief Financial Officer
- A self addressed stamped envelope

Kindly provide the aforementioned directly to GEICO.

Sincerely,
Lopez & Humphries, P.A.

*Roseanne Nick*

Roseanne Nick,
Paralegal to Melodie J. Lopez, Esq.
/rn
Enclosures